[No. S117726. July 18, 2005.]

CUMMINS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
EDWARD D. COX et al., Real Parties in Interest.

480

482

COUNSEL

Foley & Lardner, Tami S. Smason, Leila Nourani and Shauhin Talesh for Petitioner Cummins, Inc.

Sutton & Murphy, Thomas M. Murphy, Patrick J. Wehage and Kody J. Diaz for Petitioner Winnebago Industries, Inc.

No appearance for Respondent.

Law Offices of Lawrence J. Hutchens, Lawrence J. Hutchens and Michael S. Humphries for Real Parties in Interest.

## OPINION

**GEORGE, C. J.**—The Song-Beverly Consumer Warranty Act (hereafter sometimes referred to as the Act), Civil Code section 1791 et seq.,[1] provides that if a manufacturer or its representative in this state fails to repair a new motor vehicle to conform to any express warranty after a reasonable number of attempts to repair, the manufacturer must replace the vehicle or pay restitution. (§ 1793.2, subd. (d)(2).) The question presented in this case is whether a buyer who resides in California may bring suit against a manufacturer under the Act when the buyer purchased the vehicle in another state, but brought the vehicle for repair to the manufacturer's authorized repair facility in California, and repeated attempts to repair the vehicle proved unsuccessful. We conclude that the Act does not apply unless the vehicle was purchased in California.

### I.

During a visit to Idaho, plaintiffs Edward and Sandi Cox, who are California residents, purchased a motor home manufactured by defendant Winnebago Industries, Inc. and equipped with an engine made by defendant Cummins, Inc.[2] Plaintiffs filed a complaint in the Riverside County Superior Court against defendants, alleging that the motor home did not conform to express warranties and that its engine was defectively manufactured. The first cause of action was a claim for breach of express warranty and violation of the Act. Plaintiffs alleged that their vehicle was defective in numerous ways. The complaint alleged that the manufacturers' authorized repair facilities in Riverside County, California, had failed to remedy these defects after numerous attempts, and that the manufacturers violated the Act by not replacing the vehicle or providing a refund. The complaint sought actual damages of $285,872.80 plus attorney fees and a civil penalty of up to twice the amount of actual damages, the remedies provided in section 1794, subdivision (e)(1).

---

[1] All further statutory references are to the Civil Code.

[2] Although Winnebago and Cummins are petitioners in this writ proceeding, for clarity we shall refer to them as defendants, which is their status in the underlying action.

The complaint also alleged other claims, including a violation of the federal "lemon law," the Magnuson-Moss Consumer Warranty Act. (15 U.S.C. § 2301 et seq.)

Defendants moved for summary adjudication of the first cause of action on the ground that plaintiffs had purchased the motor home in Idaho, arguing that the Act applies only to vehicles purchased in California. In opposing the motion, plaintiffs argued that the California statute applies if the manufacturer's representative in California— that is, the authorized repair facility—fails after a reasonable number of attempts to repair the vehicle to conform to the express warranty. The trial court denied the motion for summary adjudication. Defendants filed a petition for writ of mandate in the Court of Appeal. That court issued an alternative writ, but after briefing and argument denied the writ, concluding that the Act applies whenever a manufacturer that sells goods in California (or its representative) "fails to service or repair the good to conform to its express warranty, even in cases when the particular good was purchased out of state." We granted review.

## II.

The Song-Beverly Consumer Warranty Act was enacted to address the difficulties faced by consumers in enforcing express warranties. Consumers frequently were frustrated by the inconvenience of having to return goods to the manufacturer for repairs and by repeated unsuccessful attempts to remedy the problem. (See Comment, *Toward an End to Consumer Frustration Making the Song-Beverly Consumer Warranty Act Work* (1974) 14 Santa Clara L.Rev. 575, 580.) The Act protects purchasers of consumer goods by requiring specified implied warranties, placing strict limitations on how and when a manufacturer may disclaim those implied warranties, and providing mechanisms to ensure that manufacturers live up to the terms of any express warranty. (See §§ 1792–1792.5, 1793, 1793.2.)

Among other provisions, the Act requires manufacturers of consumer goods sold in California to make available to buyers service and repair facilities at which goods can be repaired to conform to any express warranties provided by the manufacturer. "Every manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty" must "[m]aintain in this state sufficient service and repair facilities" to carry out the terms of the express warranty. (§ 1793.2, subd. (a)(1)(A).) The

manufacturer may maintain its own repair facility or may designate and authorize an independent repair facility to meet its responsibilities under its express warranties. (§ 1793.2, subd. (a)(1)(B).)

In addition, the Act specifies time frames within which repairs under an express warranty must be provided. Service and repair at the manufacturer's authorized repair facility in the state must be commenced "within a reasonable time." (§ 1793.2, subd. (b).) Goods must be repaired to comply with the warranty within 30 days, unless delay is caused by conditions beyond the control of the manufacturer or its representative. (*Ibid.*)

In those instances when the goods cannot be repaired to conform to an express warranty after a "reasonable number of attempts," the Act specifies a remedy, in what has been referred to as the "refund-or-replace" provisions. (§ 1793.2, subd. (d)(1) & (2); see *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174 [28 Cal.Rptr.2d 371].) For consumer goods generally, the manufacturer must either replace the goods or reimburse the buyer in an amount equal to the purchase price, less a reasonable amount for the buyer's use of the goods during the period preceding detection of the nonconformity. (§ 1793.2, subd. (d)(1).) A buyer who "is damaged by a failure to comply with any obligation" under the Act may bring an action for damages and other relief. (§ 1794, subd. (a).)

The Legislature has amended the Act and adopted additional provisions that address the special problems experienced by consumers in enforcing warranties on new motor vehicles. (See Stats. 1982, ch. 388, § 1, p. 1720; Stats. 1987, ch. 1280, § 2, p. 4557; Stats. 1992, ch. 1232, § 6, p. 5788; Stats. 1999, ch. 448.) These provisions frequently are referred to as the lemon law. In any case involving a new motor vehicle, there is a rebuttable presumption that a reasonable number of attempts have been made to repair the vehicle if, within 18 months or 18,000 miles, whichever comes first, either (1) the same problem has been subject to repair four or more times (or, if the problem is likely to cause death or serious bodily injury, two or more times) and the buyer has notified the manufacturer directly of the need for the repair, or (2) the vehicle is out of service for more than 30 calendar days because of repair under the warranty. (§ 1793.22, subd. (b).) If the buyer prevails in an action involving a new motor vehicle, the buyer may recover damages and reasonable attorney fees and costs and, under some circumstances, a "civil penalty of up to two times the amount of damages." (§ 1794, subd. (e)(1).) The lemon law also provides manufacturers with the option of establishing a third party dispute resolution process to address disputes over the enforcement of express

warranties. A manufacturer that maintains such a process receives certain advantages, including an exemption from the civil penalty unless the manufacturer has willfully violated the law. (§ 1794, subds. (c) & (e)(2).)

The substance of current section 1793.2, subdivision (d)(2), was added in 1987. (Stats. 1987, ch. 1280, § 2, p. 4558.) The 1987 amendment addressed continuing problems experienced by automobile buyers in enforcing the refund-or-replace remedy. It gave the buyer of a new motor vehicle the option of selecting reimbursement rather than a replacement vehicle, and specified in detail how the amount of reimbursement is to be calculated. (§ 1793.2, subd. (d)(2).)

The issue presented here is whether the refund-or-replace provisions contained in subdivision (d)(2) of section 1793.2 apply to vehicles purchased outside of California. In arguing that they do not, defendants rely primarily on the language of subdivision (a) of section 1793.2, which imposes the duty upon "[e]very manufacturer of *consumer goods sold in this state* and for which the manufacturer has made an express warranty" to provide facilities for repair of its goods "reasonably close to all areas where its consumer goods are sold." (Italics added.) Plaintiffs, on the other hand, maintain that the phrase "consumer goods sold in this state" in section 1793.2, subdivision (a) is a limitation only on the category of manufacturers that must provide repair facilities in this state. Because section 1793.2, subdivision (d)(2), which provides the refund-or-replace remedy for new motor vehicles, does not include an express limitation to vehicles sold in the state, plaintiffs contend that the provisions of that subdivision should not be limited to vehicles purchased in California.[3] Plaintiffs argue that if the Legislature had intended to limit the remedy to goods sold in the state, it would have included in subdivision (d) an express limitation to in-state sales, just as it did in subdivision (a) and other portions of the Act. (See, e.g., §§ 1792 [every "sale of consumer goods that are sold at retail in this state" is accompanied by an implied warranty of merchantability], 1792.1 [specifying when the

---

[3] In addition, none of the definitional provisions of the Act contains language limiting section 1793.2 to buyers who purchased their vehicles in California or to vehicles that were sold in California. A " '[b]uyer' " is defined as "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." (§ 1791, subd. (b).) The term " 'consumer goods' " means "any new product or part thereof *that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables.*" (§ 1791, subd. (a).) The term " '[n]ew motor vehicle' " is defined as "a new motor vehicle that is bought or used primarily for personal, family, or household purposes." (§ 1793.22, subd. (e)(2).)

implied warranty of fitness applies to the "sale of consumer goods that are sold at retail in this state"].)

■ In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. (*Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 811 [11 Cal.Rptr.3d 298, 86 P.3d 354].) We look first to the words of the statute, which are the most reliable indications of the Legislature's intent. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1037 [80 Cal.Rptr.2d 828, 968 P.2d 539].) We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876]; *Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].)

When considered in the context of the other portions of section 1793.2, subdivision (d) is most reasonably interpreted as applicable only to vehicles sold in California. The language employed throughout section 1793.2 strongly suggests that no single subdivision can be read independently of the others. Each subsequent subdivision employs language that can be fully understood only by reference to previous subdivisions. The language used thus indicates that all the subdivisions of section 1793.2 were intended to apply to the same universe of goods—those sold in this state.

■ Subdivision (a) of section 1793.2 provides that manufacturers of "consumer goods sold in this state and for which the manufacturer has made an express warranty" must maintain or designate repair facilities in this state.[4]

---

[4] Section 1793.2, subdivision (a) provides in full:
"(a) Every manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty shall:
"(1)(A) Maintain in this state sufficient service and repair facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of those warranties or designate and authorize in this state as service and repair facilities independent repair or service facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties.
"(B) As a means of complying with this paragraph, a manufacturer may enter into warranty service contracts with independent service and repair facilities. The warranty service contracts may provide for a fixed schedule of rates to be charged for warranty service or warranty repair work. However, the rates fixed by those contracts shall be in conformity with the requirements of subdivision (c) of Section 1793.3. The rates established pursuant to subdivision (c) of Section 1793.3, between the manufacturer and the independent service and repair facility, do not preclude a good faith discount that is reasonably related to reduced credit and general overhead cost factors arising from the manufacturer's payment of warranty charges direct to the independent service and repair facility. The warranty service contracts authorized by this

These facilities must be located "reasonably close to all areas where its consumer goods are sold." (§ 1793.2, subd. (a)(1)(A).) Subdivision (b) states that if "*those* service and repair facilities are maintained in this state and service or repair of *the* goods is necessary because they do not conform with *the* applicable express warranties," the manufacturer or its representative in this state must commence repairs "within a reasonable time." (§ 1793.2, subd. (b), italics added.)[5] The references to "those" facilities, "the" goods, and "the" warranties in subdivision (b) only can be to the facilities, goods, and warranties discussed previously in subdivision (a). Therefore "the goods" as used in subdivision (b) must refer to the same goods described in subdivision (a)—that is, "consumer goods sold in this state and for which the manufacturer has made an express warranty."

■ Subdivision (c) of section 1793.2 goes on to specify that the buyer must "deliver nonconforming goods to the manufacturer's service and repair facility within this state," unless "delivery cannot reasonably be accomplished."[6] Subdivision (c) repeatedly uses the phrase "nonconforming goods" without further definition or explanation. That phrase draws its meaning from

---

paragraph may not be executed to cover a period of time in excess of one year, and may be renewed only by a separate, new contract or letter of agreement between the manufacturer and the independent service and repair facility.

"(2) In the event of a failure to comply with paragraph (1) of this subdivision, be subject to Section 1793.5.

"(3) Make available to authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period."

[5] Section 1793.2, subdivision (b) provides in full: "(b) Where those service and repair facilities are maintained in this state and service or repair of the goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative in this state. Unless the buyer agrees in writing to the contrary, the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days. Delay caused by conditions beyond the control of the manufacturer or its representatives shall serve to extend this 30-day requirement. Where delay arises, conforming goods shall be tendered as soon as possible following termination of the condition giving rise to the delay."

[6] Section 1793.2, subdivision (c) provides in full: "(c) The buyer shall deliver nonconforming goods to the manufacturer's service and repair facility within this state, unless, due to reasons of size and weight, or method of attachment, or method of installation, or nature of the nonconformity, delivery cannot reasonably be accomplished. If the buyer cannot return the nonconforming goods for any of these reasons, he or she shall notify the manufacturer or its nearest service and repair facility within the state. Written notice of nonconformity to the manufacturer or its service and repair facility shall constitute return of the goods for purposes of this section. Upon receipt of that notice of nonconformity, the manufacturer shall, at its option, service or repair the goods at the buyer's residence, or pick up the goods for service and repair, or arrange for transporting the goods to its service and repair facility. All reasonable costs of transporting the goods when a buyer cannot return them for any of the above reasons shall be at the manufacturer's expense. The reasonable costs of transporting nonconforming goods after delivery to the service and repair facility until return of the goods to the buyer shall be at the manufacturer's expense."

subdivision (b), which refers to goods that "do not conform with the applicable express warranties." Thus, the phrase "nonconforming goods" was meant to incorporate the same meaning of "goods" that is used in subdivisions (a) and (b)—consumer goods that are "sold in this state and for which the manufacturer has provided an express warranty," and that do not conform to that warranty.

■  Subdivision (d)(1) of section 1793.2 sets out the manufacturer's general duty to replace goods or reimburse the buyer if "*the* manufacturer or its representative in this state does not service or repair *the* goods to conform to *the* applicable express warranties after a reasonable number of attempts."[7] Again, it is most reasonable to interpret the references to "the manufacturer," "the goods," and "the express warranties" to signify the manufacturer, goods, and warranties as these terms have been employed in the previous subdivisions.  ■  Therefore, it appears that the general duty to replace goods that cannot be repaired is limited to goods that are "sold in this state and for which the manufacturer has provided an express warranty." (§ 1793.2, subd. (a).)[8]

■  Subdivision (d)(2) of section 1793.2 sets out the manufacturer's duty to replace a new motor vehicle or reimburse the buyer if "the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts."[9] Subdivision (d)(2), unlike subdivision (d)(1), does not

---

[7] Section 1793.2, subdivision (d)(1) provides in full: "(d)(1) Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity."

[8] This conclusion is consistent with an opinion of the Legislative Counsel, dated January 5, 1971, responding to several questions concerning the Act. The opinion states: "In our opinion, the Song-Beverly Consumer Warranty Act would not apply to sales by a California manufacturer outside of this state where the goods are sold at retail outside the state nor to a sale by a California manufacturer within this state where the goods are resold at retail outside the state." (Ops. Cal. Legis. Counsel, No. 18909 (Jan. 5, 1971) Consumer Goods Transactions, p. 13.) In support of this conclusion, the opinion cites sections 1792, 1792.1, and 1793.2, each of which contains an express limitation to goods sold in this state. (Ops. Cal. Legis. Counsel, No. 18909, *supra*, at p. 13.)

[9] Section 1793.2, subdivision (d)(2) provides in full:
"(2) If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B).

use the phrase "the goods." Thus, subdivision (d)(2) does not directly incorporate the limitation on "goods" contained in subdivision (a) of section 1793.2. Instead, it refers to "a new motor vehicle," a phrase employed for the first time in subdivision (d)(2).

Nevertheless, we conclude that subdivision (d)(2) of section 1793.2, like subdivision (d)(1), was not meant to be read independently of the other subdivisions and likewise is limited to new motor vehicles sold in this state. A "new motor vehicle" is just one type of "consumer goods." The statute treats the special provisions applicable to new motor vehicles in subdivision (d)(2) as an exception to the general provision applicable to all consumer goods in subdivision (d)(1). The latter subdivision states that a manufacturer who cannot repair a consumer good to comply with express warranties must

---

However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.

"(A) In the case of replacement, the manufacturer shall replace the buyer's vehicle with a new motor vehicle substantially identical to the vehicle replaced. The replacement vehicle shall be accompanied by all express and implied warranties that normally accompany new motor vehicles of that specific kind. The manufacturer also shall pay for, or to, the buyer the amount of any sales or use tax, license fees, registration fees, and other official fees which the buyer is obligated to pay in connection with the replacement, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

"(B) In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

"(C) When the manufacturer replaces the new motor vehicle pursuant to subparagraph (A), the buyer shall only be liable to pay the manufacturer an amount directly attributable to use by the buyer of the replaced vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. When restitution is made pursuant to subparagraph (B), the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. Nothing in this paragraph shall in any way limit the rights or remedies available to the buyer under any other law."

replace it or make restitution, "except as provided in paragraph (2)." Subdivision (d)(2) provides the same remedies for new motor vehicles, except that the buyer has the option of selecting restitution instead of replacement and the statute provides additional specifications for both the refund and restitution remedies. (See § 1793.2, subd. (d)(2)(A)–(C).)

Although the Act treats motor vehicles differently from other types of consumer goods in several ways, we find no indication that the Legislature intended to treat motor vehicles differently with respect to the limitation on the Act's coverage to goods sold in California. As noted, *ante*, special provisions governing motor vehicles were added to the Act, beginning with the adoption of the lemon law in 1982. (Stats. 1982, ch. 388, § 1, p. 1720.) That law added new provisions to section 1793.2 specifying the circumstances under which a presumption would arise that a reasonable number of attempts have been made to conform a new vehicle to the express warranties, and also provided for a third party dispute resolution process to resolve disputes between buyers and manufacturers.[10] Under the lemon law as originally adopted in 1982, there was no special provision establishing a manufacturer's duty to refund or replace a nonconforming motor vehicle; rather, that duty was established by then subdivision (d), the general duty to refund or replace nonconforming consumer goods. Thus, all consumer goods, including motor vehicles, came under then subdivision (d), which, under the above analysis, encompassed only goods sold in this state.

The substance of current subdivision (d)(2) was adopted in 1987. The 1987 amendments to subdivision (d) added special provisions that delineate the remedy to be provided if the manufacturer cannot repair a new motor vehicle. Subdivision (d) was renumbered as (d)(1), without changing its substance, and subdivision (d)(2) was added. Subdivision (d)(2) tracks the general refund-or-replace provision of (d)(1) but contains additional specifications that apply when a new motor vehicle is involved. The buyer has the option of selecting reimbursement instead of replacement. (§ 1793.2, subd. (d)(2).) If replacement is selected, the replacement vehicle must be substantially identical to the one replaced, and the manufacturer is required to pay specified incidental damages. (§ 1793.2, subd. (d)(2)(A).) If restitution is selected, the amount is to be calculated as specified by the statute. (§ 1793.2, subd. (d)(2)(B).) Nothing in subdivision (d)(2) suggests the Legislature intended to broaden the coverage of the statute to vehicles sold outside the state.

---

[10] As originally adopted, these provisions were added to subdivision (e) of section 1793. The substance of that subdivision later was moved to section 1793.22, which now is identified as the Tanner Consumer Protection Act. (§ 1793.22, subd. (a); Stats. 1992, ch. 1232, § 6, p. 5788.)

■    Another part of the Act, the notice requirement in section 1793.1, also provides support for the conclusion we reach. That statute specifies the contents of a notice of rights that must be included in every "work order or repair invoice" for warranty repairs. The notice must state: " 'A *buyer of this product in California* has the right to have this product serviced or repaired during the warranty period.' " (§ 1793.1, subd. (a)(2), italics added.) The notice also must describe the rights provided to buyers under section 1793.2, subdivision (d). The phrase "a buyer of this product in California" indicates that the Legislature believed those rights applied only to a buyer who purchased the product in California. The quoted language in section 1793.1 was adopted in 1982, before the 1987 amendments that added subdivision (d)(2) but after the original adoption of the general refund-or-replace requirements now contained in subdivision (d)(1). (Stats. 1982, ch. 381, § 1, p. 1709.) Although an expression of legislative intent in a later enactment is not binding upon a court in its construction of an earlier enacted statute, it is a factor that may be considered. (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 610 [86 Cal.Rptr. 793, 469 P.2d 665]; *Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1136 [280 Cal.Rptr. 535].) Furthermore, we may presume that when the Legislature adopted subdivision (d)(2) in 1987, it was aware of the language in section 1793.1 and understood the scope of the Act to be limited to products purchased in California.[11]

If the refund-or-replace provisions of the Act were applicable to goods purchased outside of the state, uncertainties would be created as to the precise reach of the law. In the present case, plaintiffs are California residents and all of the repair attempts took place in California. Section 1793.2 is not limited to California residents, however. And although the statute requires the buyer to deliver the nonconforming goods to "the manufacturer's service and repair

---

[11] In support of their argument that section 1793.2, subdivision (d)(2) applies only to vehicles sold in California, defendants cite letters from the staff of Senator Song, a co-author of the Act, stating the Senator's belief that the Act applies only to goods sold in California. Because our interpretation relies on the language of the Act, we find it unnecessary to consider these letters. In addition, as we have observed, "the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th. 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057]; see *People v. Farell* (2002) 28 Cal.4th 381, 394 [121 Cal.Rptr.2d 603, 48 P.3d 1155]; cf. *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1257 [13 Cal.Rptr.3d 793, 90 P.3d 752] [noting that letter from staff of the author of a bill to amend the Act, explaining the purpose of amendments, supported court's interpretation of those amendments, but without discussing whether letter was brought to the attention of the Legislature].) Defendants have not provided any evidence that similar views were presented to the Legislature when it acted. Furthermore, the author's opinions, as stated in these letters, were expressed in response to particular questions and do not address the specific issue that is before us in the present case. We note, however, that neither party has brought to our attention anything in the legislative history of the Act or the lemon law that is inconsistent with our interpretation of section 1793.2, subdivision (d)(2).

facilities within this state," it does not explicitly require that all of the "reasonable number" of repair attempts be made within this state. (§ 1793.2, subds. (c) & (d)(2).) Could a nonresident sue under the Act if he or she brought a vehicle to California for a single repair attempt after unsuccessful attempts to repair in the state of sale? If the statute were interpreted to apply to vehicles purchased outside of the state, its provisions would not provide an answer.[12] The circumstance that the Act does not contain any provision that would clarify its territorial scope if it were applied to goods sold outside the state is another factor that supports our conclusion that the Legislature contemplated that the Act would apply only if the goods were purchased in California.

In reaching a contrary conclusion, the Court of Appeal in the present case relied upon the absence of any express language in section 1793.2, subdivision (d) limiting the subdivision to goods sold in this state, concluding that the subdivision should be interpreted broadly in light of the remedial purposes of the Act. We agree that the Act is a remedial measure whose terms properly should be interpreted broadly to effectuate its purposes. (See, e.g., *National R.V., Inc. v. Foreman* (1995) 34 Cal.App.4th 1072, 1080 [40 Cal.Rptr.2d 672]; *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610, 619 [39 Cal.Rptr.2d 159]; *Kwan v. Mercedes-Benz of N. America, Inc., supra,* 23 Cal.App.4th 174, 184.) Nevertheless, we must interpret the language of the statute as it has been written, not as it might have been drafted had the Legislature contemplated and chosen to address the specific concerns of California buyers who purchased their vehicle in another state. As we have explained, the structure and language of the existing statutory provisions indicate that the Legislature intended the Act to apply only to vehicles sold in California.

---

[12] Some states whose lemon laws are not limited to vehicles sold in the state have addressed such problems by requiring that the vehicle be licensed or registered in the state. (See Alaska Stat. § 28.10.011 [applies to vehicles registered in the state]; Ark. Code Ann. § 4-90-403(11) [applies to vehicles licensed or purchased in the state]; Del. Code Ann., tit. 6, § 5001(5) [defines an automobile to include any vehicle sold or registered in the state]; D.C. Stat. § 50-501(9) [applies to vehicles sold or registered in the District of Columbia]; Fla. Stat. Ann. § 681.102(15) [applies to vehicles sold in the state]; Ga. Code Ann. § 10-1-782(11) [applies to vehicles sold or registered in the state]; Idaho Code § 48-901(7) [applies to any motor vehicle sold or licensed in the state]; Kan. Stat. Ann. § 50-645(a)(2) [applies to vehicles sold or registered in the state]; N.J. Laws § 56:12-30 [applies to vehicles purchased or registered in the state]; N.Y. Gen.Bus.L. § 198-a, subds. (a)(1) & (b)(2) [applies to any vehicle sold or registered in the state]; Okla. Stat. tit. 15, § 901(A)(2) [applies to vehicles registered in the state]; Or. Rev. Stat. § 646.315(2) [applies to vehicles sold in the state]; 73 Pa.Cons.Stat.Ann. § 1952 [applies to motor vehicles purchased and registered in the state]; Vt. Stat. Ann., tit. 9, § 4171(9) [applies to vehicles purchased or registered in the state]; Wyo. Stat. Ann. § 40-17-101(a)(ii) [applies to vehicles sold or registered in the state].)

## III.

For the reasons stated above, the decision of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.