Filed 6/20/22 P. v. Zapata CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS DAMIAN ZAPATA,<br><br>    Defendant and Appellant. | G060432<br><br>(Super. Ct. No. 05WF0647)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Cheri T. Pham, Judge.  Reversed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Steve Oetting, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

The Three Strikes Reform Act of 2012 (the Act) created a resentencing procedure for inmates serving an indeterminate third-strike sentence, where the third strike was not a serious or violent felony. (Penal Code, § 1170.126.)[1] Section 1170.126, subdivision (b), provides a two-year window from the effective date of the statute to file a petition for resentencing. That period expired November 7, 2014. But it also provides that a petition may be filed "at a later date upon a showing of good cause . . . ."

In 2012, Jesus Damian Zapata was convicted of a single count of false impersonation. (§ 529, subd. (a)(3).) In short, he was pulled over for not wearing a seat belt and claimed to be his brother, who owned the car. Normally, this is a wobbler — i.e. a crime punishable either as a misdemeanor or a felony, in the latter case carrying a punishment of 16 months, 2 years, or 3 years in prison. (§ 529, subd. (b).) However, because defendant had prior strikes, he was sentenced to 25 years to life in prison.

On direct appeal from his conviction, we affirmed the judgment but remanded for the court to resentence defendant consistent with the Act. (*People v. Zapata*, G047277, Sept. 20, 2013 [nonpub. opn.].) Our decision was appealed to the California Supreme Court, who granted the petition and held the matter. In *People v. Conley* (2016) 63 Cal.4th 646, our high court held that a defendant is not entitled to automatic resentencing under the Act, but instead must file a petition pursuant to section 1170.126. (*Id.* at pp. 661-662.) The matter was remanded to us, and, in 2017, we remanded to the trial court with directions to accept a section 1170.126 petition within one year of the opinion becoming final. (*People v. Zapata*, G047277, Mar. 20, 2017 [nonpub. opn.] (*Zapata II*).)

Defendant did not, however, file a petition within that year. Instead, he filed his petition in April 2021. The court summarily denied the petition without holding a hearing, describing the petition as "informal, ex parte communication on which the

---

[1]     All statutory references are to the Penal Code.

court will not act," and commenting, "Defendant's case is final, and there is no pending matter to which Defendant's request(s) may attach, no jurisdiction remaining, and no authority for the court to address Defendant's case." Defendant appealed.

The People concede that the court erred insofar as it summarily denied the petition without conducting a good cause analysis. However, the People maintain that defendant's excuses for the late filing are not good enough to rise to the level of good cause, and thus the error was harmless.

We will reverse.

In reversing this order, we feel compelled to remind the Attorney General's office that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate." (Rules of Prof. Conduct, rule 5-110, comment 1.) Defendant is serving a grossly disproportionate sentence wholly at odds with the letter and the spirit of current laws. Given the circumstances of this case, "good cause" should be given a broad interpretation consistent with the ends of justice, which the trial court must determine in the first instance.


FACTS[2]

"In March 2005, Police Officer Ramiro Vergara initiated a traffic stop of Zapata because he was not wearing a seat belt and failed to signal before turning. A DMV check revealed the vehicle was registered to Juan Zapata, Zapata's brother, and registration for the car had expired. Defendant identified himself as Juan Zapata, with a birth date of December 18, 1984, and told Vergara the vehicle belonged to his girlfriend. A records check showed Juan Zapata did not have a driver's license.

---

[2] The following facts are taken verbatim from our 2017 prior opinion. (*Zapata II, supra,* G004722.)

3

"After backup arrived, Vergara found a pipe in defendant's pocket, plus bullets and a loaded gun in the vehicle. Zapata was arrested and taken to the police station, where he continued to claim his name was Juan Zapata.

"Vergara completed a prebooking form based on the information Zapata provided. He collected evidence from Zapata's hands to test for gunshot residue (GSR) under the name of Juan Zapata and sent it to the lab for testing under that name. Zapata also provided a DNA sample and was booked under the name Juan Zapata. Fingerprints later revealed Zapata was Jesus Zapata with a birth date in 1978." (*Zapata II, supra,* G004722.)

STATEMENT OF THE CASE

A jury convicted defendant Jesus Damian Zapata of felony false impersonation (§ 529, subd. (a)(3); formerly § 529, subd. 3), but found him not guilty of carrying a concealed weapon in a vehicle, and street terrorism. The trial court thereafter found true the allegations Zapata had 11 prior serious or violent felony convictions (§§ 667, subds. (d), (e)(2), 1170.12, subds. (b), (c)(2)(A)) and had served a prior prison term (former § 667.5, subd. (b)). It dismissed the allegations of two prior serious felonies (§ 667, subd. (a)(1)) and sentenced Zapata to an indeterminate term of 25 years to life, plus a one-year term under section 667.5, subdivision (b).

Defendant appealed from his conviction. As described in the introduction, we affirmed the judgment but remanded the matter for resentencing consistent with the Act, which had become effective during the pendency of the appeal. The California Supreme Court subsequently decided that a defendant was not entitled to automatic resentencing, but instead was required to file a petition. Once the matter was remanded to us, we again affirmed the opinion, this time instructing the trial court to accept a petition filed within one year of the remittitur, which expired in April 2018.

4

Defendant filed his petition in April 2021. The petition included a declaration from defendant explaining why he filed his petition late. Defendant stated he was aware of the Act's provision permitting a late petition for good cause, and declared he wanted to remain in custody to attend more self-help groups that would help him rehabilitate himself. He attached exhibits indicating he had been taking math classes and had "continually participated in the Criminals & Gangmembers Anonymous (CGA) recovery program and has been an asset to the program's growth and popularity by making good use of his time and making himself available in follow-up workshop meetings." He also attached completion certificates from the following programs: Alternatives to Violence Project, Tools for Positive Decision Making, Parole Suitability Readiness Workshop, and an American Cancer Society Relay for Life event. Defendant also declared that a "mass disturbance" led to a lock down of the entire Hispanic prison population, which led to a lawsuit and a settlement since the restriction was unlawful and based on race. Defendant was listed as a member of a "suspected class" and took time to get himself removed from that list. Defendant also noted that COVID-19 quarantine restrictions limited his movement.

As we noted in the introduction, the trial court summarily denied the petition and defendant appealed.

## DISCUSSION

"Proposition 36 was passed by the electorate on November 6, 2012, and the Act went into effect the following day. (Initiative Measure, Prop. 36, §§ 6, 10, approved by voters, Gen. Elec. (Nov. 6, 2012); see Cal. Const., art. II, § 10, subd. (a).) The Act prospectively reduced the punishment previously proscribed for certain defendants convicted of a third strike offense. Additionally, . . . it created a 'retroactive relief procedure' for certain inmates serving an indeterminate, third strike sentence under the former Three Strikes law. [Citation.]

5

"The then newly enacted resentencing procedure allows an inmate to file 'a petition for a recall of sentence' within two years of Proposition 36's effective date, 'or at a later date upon a showing of good cause.' (§ 1170.126, subd. (b).) An inmate is eligible for resentencing only if (1) he or she is serving an indeterminate 'third strike' sentence for a felony that is not considered serious or violent, as defined by law; (2) the third strike sentence was not imposed for one of certain enumerated, disqualifying offenses; and (3) the inmate had no prior conviction for any of certain other enumerated, disqualifying offenses. (§ 1170.126, subd. (e).) If the inmate meets the eligibility requirements for resentencing, he or she will be resentenced by the trial court, unless the court determines, in its discretion, 'that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).)

"The time to petition for recall of sentence pursuant to Proposition 36 expired in November 2014. (§ 1170.126, subd. (b).)" (*People v. Valencia* (2021) 64 Cal.App.5th 641, 647 (*Valencia*). Since that time, a petition may only be filed upon a showing of good cause. (§ 1170.126, subd. (b).)

There is no question that the court erred in this case by summarily denying defendant's petition without conducting a good cause analysis. The People concede the error, which is plain on the face of section 1170.126, subdivision (b). In general, in cases where a court fails to exercise its discretion, "remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

The People argue that remand is unnecessary because it would be an "idle act" insofar as defendant did not set forth evidence of good cause. We disagree. "[A] trial court 'has broad discretion to determine whether good cause exists.'" (*People v. Drew* (2017) 16 Cal.App.5th 253, 257.) Two relevant factors in that determination are "(1) the nature and strength of the justification for the delay, [and] (2) the duration of the delay . . . ," but courts must further consider "all of the relevant circumstances of the

6

particular case, 'applying principles of common sense to the totality of circumstances.'" (*Ibid.*) Moreover, because the Three Strikes Reform Act is a remedial act, it should be interpreted liberally to effectuate its purposes. (See *Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 493 [a remedial act "should be interpreted broadly to effectuate its purposes"].)

One circumstance courts should consider is the nature of the underlying third strike conviction. One of the primary arguments in favor of the Act was to "MAKE THE PUNISHMENT FIT THE CRIME." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of proposition 36.) Moreover, there was broad awareness at that time that the three strikes law was resulting, in some instances, in grossly disproportionate sentences that shocked the conscience, which undoubtedly was a motivating factor for the electorate. This case is a prime example of such a sentence. Defendant was imprisoned for 25 years to life for trying to avoid a seatbelt traffic ticket by claiming to be his brother. In the grand scheme of crime and punishment, this was a very minor offense. Under no just system of laws should defendant have been imprisoned for 25 years to life for such a paltry crime. And that is precisely what the voters of California recognized by passing the Act. In considering whether there is good cause to entertain a belated petition for resentencing under the Act, therefore, the court should take this circumstance into consideration.

The People's argument for affirming relies primarily on *Valenica, supra,* 64 Cal.App.5th 641, which we find distinguishable in several important respects. In *Valencia* the defendant filed a timely petition under the Act, which was denied on the ground that his release would create an unreasonable danger to society. Four years later, the defendant filed a *second* petition, this one untimely, on the ground that evidence of his rehabilitation while in prison rebutted the conclusion that he was a danger to society. The trial court denied the second petition on the ground that the Act only provides for one petition. The *Valencia* court affirmed that order on a different ground. It concluded that

7

even if successive petitions are permitted, rehabilitation while in prison, in and of itself, would not be adequate good cause as a matter of law. (*Ibid.* ["even if we assume that section 1170.126 permits successive petitions to be filed beyond the statute of limitations in some circumstances, changed circumstances relating to an inmate's rehabilitative progress cannot, as a matter of law, constitute good cause for such delay"].) The court reasoned that successive petitions on rehabilitation grounds were contrary to the electorate's expectations that the costs of resentencing would primarily be born in the first two years after passage of the Act.

We do not read *Valencia* as standing for the proposition that a court may never consider an inmate's rehabilitation in deciding whether there was good cause for delay. The issue in *Valencia* dealt with *successive* petitions and the prospect that a court may see such petitions over and over again every time the defendant completes a new program in custody. Here, by contrast, defendant is filing his *first* petition for resentencing. The fact that he decided to rehabilitate himself so as *not* to be a danger to society is a factor the court may consider in deciding whether there is good cause to consider a belated petition.

Moreover, unlike the defendant in *Valencia*, rehabilitation was not defendant's only excuse. For much of the time since 2014, defendant's case was tied up in litigation, and there was obviously good cause during that period. Additionally, defendant cited a mass lockdown and COVID-19 as additional factors that led to his delay in filing a petition. And as we have already mentioned, the nature of the underlying third strike offense. Looking at the totality of the circumstances, we cannot say that defendant failed to demonstrate good cause as a matter of law, and thus we will remand the case for the court to consider the issue in the first instance.

DISPOSITION

The postjudgment order denying defendant's petition for resentencing pursuant to section 1170.126 is reversed.


MARKS, J.*

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.