[No. D017475. Fourth Dist., Div. One. June 29, 1995.]

RALPH BRIENZA, Plaintiff and Respondent, v.
JERRY J. TEPPER et al., Defendants and Appellants.

## COUNSEL

Frank, Ayers & Larsen, Robert D. Frank and Katherine A. Yesson for Defendants and Appellants.

Givens & Mazzanti and Gino V. Mazzanti for Plaintiff and Respondent.

## OPINION

**HOFFMAN, J.*—**Defendants Jerry J. Tepper and C.F. Group, Ltd. (together Tepper) appeal an order finding plaintiff Ralph Brienza's (Brienza) attorney's lien for contingency fees in the underlying lawsuit against Tepper was entitled to priority over a subsequently acquired offset obtained by Tepper (the judgment debtor) against Brienza (the judgment creditor). We affirm.

### FACTS

The parties agree no disputed facts exist in this case which we summarize below.

*San Diego Case*

On April 4, 1990, Brienza filed the underlying lawsuit against Tepper. The complaint alleged various causes of action arising out of a breach by Tepper of an alleged oral partnership agreement.

On January 24, 1991, Brienza retained Attorney Gino V. Mazzanti (Mazzanti) under a contingency fee agreement. The agreement provided that

---

*Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Council.

Brienza granted Mazzanti a lien on Brienza's claim to secure attorney fees and costs.

After a court trial, judgment was entered on July 8, 1992, in favor of Brienza and against Tepper in the amount of $99,773 and postjudgment interest at a rate of $27.33 per day.[1]

*Colorado Case*

On March 4, 1991, in Jefferson County, Colorado, First Interstate Bank (FIB) obtained a judgment against Brienza[2] in the amount of $119,035.83 and postjudgment interest at a rate of $31.19 per day. On September 16, 1992, FIB assigned its Colorado judgment against Brienza to Tepper in exchange for $13,500.

*San Diego Case Offset Proceedings*

On September 24, 1992, Tepper domesticated the Colorado judgment pursuant to Code of Civil Procedure section 1710.25 in the San Diego case where Brienza had obtained judgment against Tepper. Brienza failed to move to vacate the judgment within 30 days from service of notice of entry of judgment which became final in California on October 28, 1992.

On January 29, 1993, Tepper filed a motion to offset his Colorado judgment against Brienza's judgment in the instant action.[3] In connection with the offset motion, Tepper requested the court order: (1) Brienza's judgment against Tepper has been satisfied; (2) Tepper's judgment against Brienza has been partially satisfied and $41,090.03 of the judgment remains unpaid; and (3) any liens arising out of Brienza's judgment against Tepper are extinguished.[4]

Tepper's offset motion was opposed by Brienza on March 17, 1993. Brienza did not contest Tepper's position that the Colorado judgment may be used as an offset to Brienza's judgment. However, Brienza argued that

---

[1]Tepper filed a notice of appeal from the judgment on September 8, 1992, and on September 23 filed an undertaking on appeal which stayed the execution of Brienza's judgment.

[2]FIB's Colorado judgment was against A & B Development Co., a Colorado general partnership of which Brienza was a general partner.

[3]As of January 26, 1993, the Colorado judgment Tepper had acquired against Brienza with postjudgment interest totaled $146,393.69. As of the same date, Brienza's judgment with postjudgment interest against Tepper had reached $105,303.66.

[4]Tepper also lodged with the court a transcript of Brienza's debtor examination conducted on January 7, 1993. The transcript demonstrated that Brienza was in fact insolvent with obligations from civil judgments and federal taxes in excess of $2 million.

Mazzanti's lien for attorney fees and costs established by the January 24, 1991, retainer agreement in Brienza's lawsuit against Tepper had priority over any offset allowed to Tepper.[5]

Tepper's offset motion was heard on March 25, 1993. On May 28, 1993, the court filed its statement of decision which granted Tepper's motion except as to Mazzanti's lien for fees and costs pursuant to the retainer agreement. A written order "granting [the offset] in part and denying [the offset] in part" was filed on August 4, 1993. On August 25, 1993, Tepper filed an amended notice of appeal which limited the appeal to the court's denial of Tepper's motion for offset as to Mazzanti's attorney fees.[6]

DISCUSSION

I

Tepper contends the court erred in granting Mazzanti's lien for attorney fees and costs priority over the offset based upon the Colorado judgment against Brienza. Because this issue presents solely a question of law, we exercise our independent judgment on appeal. (*Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 131].)

Tepper relies on two California appellate decisions as support for his position the court erred when it determined the Colorado judgment he obtained could be used as an offset against Brienza's judgment but declined to grant the offset priority against Mazzanti's lien for attorney fees and costs.

Tepper first relies on *Margott* v. *Gem Properties, Inc.* (1973) 34 Cal.App.3d 849 [111 Cal.Rptr. 1] (hereafter *Margott*). In that case, plaintiff (Margott) as promisor under a note secured by a deed of trust sued defendant (Gem), the promisee under the note, for causing a fraudulent trustee's sale under the deed of trust. At trial, Margott secured a judgment setting aside the sale and was awarded both compensatory and punitive damages. Thereafter, Gem acquired by assignment a valid enforceable judgment against Margott

---

[5]Brienza's opposition did not provide the court with a monetary amount of Mazzanti's lien. A copy of the retainer agreement included as "compensation to attorney" a fee of 40 percent of any recovery, litigation costs and expenses and $215 per hour for posttrial services rendered. Brienza's opposition does state that allowing a full offset to Tepper would "wipe out" Mazzanti's lien for fees and costs.

[6]On September 13, 1993, the parties stipulated to decrease the $153,000 appeal bond posted by Tepper on September 23, 1992, to $80,000.

and filed a motion to offset the assigned judgment against Margott's award.[7] Gem's motion disclosed that Margott was insolvent. (*Id.* at pp. 852-853.)

Margott did not dispute the validity of the assigned judgment now owned by Gem. Instead, Margott asserted the remaining amount owed to Gem on the promissory note (secured by the deed of trust) should be offset against the judgment rendered by the court. (*Margott, supra,* 34 Cal.App.3d at p. 853.) In addition, Margott's declaration stated that before Gem acquired the assigned judgment, Margott had entered into a 40 percent contingency fee agreement with counsel which was secured by a lien upon any judgment obtained by Margott. The trial court entered a judgment offsetting the remaining amount due from Margott on the promissory note which effectively discharged Margott's secured obligation to Gem leaving Gem with an unsecured and apparently uncollectible judgment against Margott. (*Id.* at pp. 853-854.)

The appellate court reversed the trial court's ruling with respect to the offset. The court held "that [while] the trial court has discretion in enforcing the right of offset, the discretion must be exercised within legal limits. Thus, unless the judgment creditor [Margott] establishes the existence of facts supporting some equitable principle precluding it, offset is a matter of right [citations], at least where the judgment creditor is insolvent. [Citations.]" (*Margott, supra,* 34 Cal.App.3d at p. 854.)

The appellate court concluded precedential expression of general rules strongly indicates it is the judgment debtor (Gem) who has the right to choose which of several claims against the judgment creditor (Margott) should be offset. (*Margott, supra,* 34 Cal.App.3d at p. 855.) As such, Gem should have been allowed to offset the unsecured obligation acquired by assignment against Margott which would continue to preserve the secured claim unless some equitable ground precludes such election. (*Ibid.*)[8]

The appellate court also rejected Margott's contention that offset is defeated by counsel's lien to secure his right to a contingency fee of 40 percent, reasoning that because the offset to which Gem was entitled now results in Margott receiving essentially nothing, no contingency fee was due (*Margott, supra,* 34 Cal.App.3d at p. 856) and the lien is ineffective to defeat Gem's right of offset. (See *Gostin* v. *State Farm Ins. Co.* (1964) 224 Cal.App.2d 319, 325 [36 Cal.Rptr. 596].) Nevertheless, the court in *Margott*

---

[7]Gem's acquired assigned judgment against Margott was in the approximate amount of Margott's recovery against Gem.

[8]The appellate court in *Margott* noted the trial court allowed an offset of the secured note at Margott's request before it heard Gem's motion to offset the unsecured claim. (*Margott, supra,* 34 Cal.App.3d at p. 855.)

remanded the case to the trial court to determine the priority of the lien for attorney fees as against Gem's claim of offset and other questions which could not be decided on appeal until a factual basis was developed. (*Margott, supra,* 34 Cal.App.3d at p. 857.)

*Margott* was the primary legal authority relied on by Tepper in the trial court. The court found the court in *Margott* did not address whether the claimed offset will always prevent the allowance of attorney fees. We agree. The failure of the trial court in *Margott* to conduct a hearing on Gem's offset claim and the equitable defenses asserted by Margott left factual issues to be developed on remand. One of those issues was the priority of the lien for attorney fees against Gem's claim of offset. (*Margott, supra,* 34 Cal.App.3d at pp. 856-857.)

## II

Tepper also relies on *Salaman v. Bolt* (1977) 74 Cal.App.3d 907 [141 Cal.Rptr. 841] (hereafter *Salaman*) as authority for the principle that a claimed offset will always take precedence over a lien for attorney fees. In *Salaman,* the plaintiff lessors (Salaman) sued defendant lessee (Bolt) for unlawful detainer. The trial court entered judgment for Bolt on equitable grounds in that Salaman engaged in " 'oppressive, retaliatory and inequitable conduct' " as a sublessee of a portion of the leased premises. The court awarded Bolt $8,000 for attorney fees and costs. (*Id.* at p. 913.)

About one and a half years later, Bolt confessed judgment in favor of his attorney, Field, in the amount of $31,036.52 for attorney services rendered in defending the unlawful detainer action. Field moved (under former Code Civ. Proc., § 688.1, repealed 1982, now §§ 708.410-708.480) to impress a lien on Bolt's judgment for attorney fees. (*Salaman, supra,* 74 Cal.App.3d at p. 913.) Field's motion was denied, but after a successful appeal the attorney fees lien was impressed on Bolt's judgment. (*Id.* at pp. 913-914.)

In the meantime in an unrelated action, Salaman recovered a judgment by default against Bolt for $6,214.44 and moved to offset this judgment against Bolt's judgment in the unlawful detainer case. (*Salaman, supra,* 74 Cal.App.3d at p. 914.) The trial court denied Salaman's offset motion, ruling Field had a valid lien with priority over Salaman's claim of offset. (*Ibid.*)

The primary issue before the appellate court was whether the trial court had properly given priority to Field's lien for attorney fees over Salaman's

claim of offset. (*Salaman, supra*, 74 Cal.App.3d at p. 916.)[9] The court noted that giving priority to Field's lien ($31,036.52) would defeat Salaman's offset since Field's lien exceeded the amount of Bolt's judgment against Salaman ($8,000). (*Id.* at p. 917.) Had the court given priority to Salaman's claim of equitable offset ($6,214.44), Field's lien would reach only the excess ($1,785.56) remaining after Salaman's judgment had been offset. (*Id.* at pp. 914, 918.)

After noting the issue was one of first impression, the court stated that "[a]mong nonparty lien claimants, the basic rule is well established that they have priority according to the time of the orders creating their liens, 'other things being equal.' (Civ. Code, § 2897; *Takehara v. H.C. Muddox, supra*, 8 Cal.3d 168.)" (74 Cal.App.3d at p. 918.)

The *Salaman* court then held a statutory lien and a right of equitable offset are not equal and the offset is given an equitable preference. (*Salaman, supra*, 74 Cal.App.3d at p. 918.) The court reversed the finding of the trial court and directed that Salaman's offset be allowed and that Field's lien only reach the excess remaining after the offset. (*Id.* at p. 920.)

The *Salaman* court explained that unlike a lien, offset exists independent of statute and is based on the inherent power of the court to do justice to the parties before it. (*Salaman, supra*, 74 Cal.App.3d at p. 918.) The court relied on language in *Harrison v. Adams* (1942) 20 Cal.2d 646, 648-649 [128 P.2d 9] that " '. . . a judgment debtor who has, by assignment or otherwise, become the owner of a judgment or claim against his judgment creditor, may go into the court in which the judgment against him was rendered and have his judgment offset against the first judgment. . . .' [Citations.]" (*Salaman, supra*, 74 Cal.App.3d at p. 918.)

The *Salaman* court concluded by stating "the offset of judgment against judgment is a matter of right absent the existence of some facts establishing an equitable principle precluding it. [Citations.]" (*Salaman, supra*, 74 Cal.App.3d at p. 919.) The court held because the defenses of laches and unclean hands raised by Field were inapplicable to the default judgment in the unrelated matter, the right of offset was not defeated. (*Id.* at p. 920.)

---

[9]At the outset of its discussion on the question of priority, the court (First District, Division One) conceded the language in the unpublished opinion of the First District, Division Two, in the first appeal (to impress the lien for attorney fees on the judgment) clearly indicated that priority should be given to Field's lien over Salaman's claim of offset. In its opinion, Division Two discussed Civil Code section 2897 and the rule of *Takehara v. H.C. Muddox* (1972) 8 Cal.3d 168, 170 [104 Cal.Rptr. 345, 501 P.2d 913], that the priority of judgment creditors depends on the date of the orders creating the liens (finding that Salaman had not shown his lien predated Field's lien). The *Salaman* court (Division One) concluded this language was obiter dicta and not law of the case. (*Salaman, supra*, 74 Cal.App.3d at pp. 916-917.)

While there is language in *Salaman* favorable to Tepper's position, that case is not dispositive here. As Brienza points out, *Salaman* did not involve a contingency fee agreement which established a contractual lien for fees. In *Salaman*, after judgment was obtained by Bolt, he confessed judgment to Field for attorney fees incurred in defending the unlawful detainer action. Field then perfected a lien on Bolt's judgment pursuant to Code of Civil Procedure section 688.1. As such, Field was in no better position than any other third party creditor who perfects a lien on a judgment pursuant to Code of Civil Procedure section 688.1. *Salaman* did decide the question of priority between a statutory lien and a right of equitable offset, giving preference to the offset. (*Salaman, supra*, 74 Cal.App.3d at p. 918.)

Here, Mazzanti has a contractual lien with Brienza which was created before Brienza obtained his judgment against Tepper. An attorney's contractual or "charging" lien is equitable in nature. (See *Haupt* v. *Charlie's Kosher Market* (1941) 17 Cal.2d 843, 845 [112 P.2d 627].) Thus, Brienza argues, "the court must determine the priority between Mazzanti's equitable contractual lien and Tepper's equitable right of [offset] by balancing the competing equities."

We also believe the *Salaman* case can be further distinguished in that there, the offset given priority over Field's statutory lien was a true equitable offset since it represented a separate, though unrelated, claim between the parties to the litigation. It would seem logical that greater consideration would be accorded to honoring the offset based on the judgment Salaman obtained against Bolt than would the purchase of a judgment from a third party judgment creditor.

We also have difficulty with the result reached in *Salaman*. After concluding the offset of judgment is a matter of right absent the existence of some facts establishing an equitable principle precluding it (*Salaman, supra*, 74 Cal.App.3d at p. 919), the court focused on the unrelated matter by which Salaman had obtained a judgment by default against Bolt. The court thus ignored the findings of the trial court in the underlying unlawful detainer action that Salaman acted in a retaliatory and inequitable manner. (*Id.* at p. 920.) In our view, when Salaman's inequitable conduct was the cause of the lawsuit being initiated by him and Bolt had to incur substantial attorney fees to defend that suit, the equitable defense of unclean hands should have precluded giving priority to Salaman's offset claim.

### III

From *Margott* and *Salaman* we accept the principle that a judgment debtor who has acquired a judgment or claim against his judgment creditor

may ask the court in which the judgment against him was rendered to have his judgment or claim offset against the first judgment. The offset of judgment against judgment is a matter of right absent the existence of facts establishing competing equities or an equitable defense precluding the offset. (*Harrison* v. *Adams, supra,* 20 Cal.2d at pp. 648-649.)

 As we view our task, we must determine under the facts of this case if sufficient equitable grounds exist to accord Mazzanti's contractual lien priority over Tepper's equitable right of offset. We conclude the equities in this case clearly support and should dictate this result.

At the outset, we understand Brienza is insolvent and is unable to pay either attorney fees to Mazzanti or satisfy the Colorado judgment obtained by FIB and assigned to Tepper. By according priority to Mazzanti's lien for attorney fees, Tepper will still be able to assert an offset to a substantial portion of Brienza's judgment against him. This result is unlike *Salaman* where granting priority to the attorney's statutory lien would have totally defeated the equitable offset. (*Salaman, supra,* 74 Cal.App.3d at pp. 917-918.)

As noted previously in discussing *Salaman,* Tepper's assignment of FIB's Colorado judgment was not a true equitable offset between the parties as existed in *Salaman.* Here, the record established Tepper purchased the $143,041.03 Colorado judgment against Brienza for $13,500. Given Brienza's insolvent status, Tepper clearly had the superior bargaining position to acquire the assignment of the judgment at substantially less than full value. While we recognize Tepper was within his right in seeking and obtaining the Colorado judgment to use as an offset, we cannot accord it the same weight in equity as a true equitable offset between the parties where judgment is obtained by filing suit, expending time and incurring fees and costs.[10]

 In a similar light, we note the court in *Salaman* stated "[a]s a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies subject to any right to offset or other defenses existing against the assignor prior to actual notice of the assignment. (Civ. Code, § 1459; Code Civ. Proc., § 368.)" (*Salaman, supra,* 74 Cal.App.3d at p. 919.) The court then applied this rule against attorney Field as a lien claimant from his judgment debtor (Bolt). (*Ibid.*) If we apply the rule that an assignee "stands in the shoes of his assignor" then FIB could

---

[10]We also note that Mazzanti's contractual lien was created on January 24, 1991, almost two years before Tepper acquired his offset through the Colorado judgment. Brienza's judgment upon which the lien attached was entered on July 8, 1992, more than two months before Tepper acquired the offset. Obviously, Tepper's interest in acquiring FIB's Colorado judgment was simply a business decision to defeat Brienza's judgment through offset.

assign Tepper no greater rights than FIB possessed. As such, as between competing third party claimants, Mazzanti by his contractual lien established on January 24, 1991, had priority over FIB's Colorado judgment obtained on April 4, 1991, and later assigned to Tepper.[11] On these facts alone, we are satisfied the court was correct in according Mazzanti's lien for attorney fees priority over Tepper's offset claim based on his acquisition of the Colorado judgment.

■ We also note that our holding giving Mazzanti's lien for contingent attorney fees priority over Tepper's subsequently acquired offset through assignment from a third party creditor is in accordance with Freeman on Judgments (5th ed. 1925) section 1148, page 2392, which states:

"[T]he court may doubtless exercise its discretion in the allowance of a set-off to protect an attorney's lien, under proper circumstances[.] And the general rule is that while an attorney's lien is subordinate to the rights of the adverse party to offset judgments in the same action or in actions based upon the same transaction, it is nevertheless superior to any right to offset judgments obtained in wholly independent actions, though, of course, a lien would not in any case prevent a set-off as to the balance of the judgment. And clearly where the lien has attached to the judgment upon its rendition, it cannot be defeated by a subsequent right of set-off. So where, by virtue of his contract with his client, an attorney becomes the legal or equitable owner of a portion of or interest in the judgment, his rights are superior to the right to set off against such judgment a judgment recovered or obtained after the contract was made.

"Some cases go to the extent of sustaining the rights of an attorney, as an assignee, against a judgment obtained against his client before the assignment and of which he had no notice, but in the absence of some statutory preference there seems to be no reason why the rule under such circumstances should differ from that prevailing generally in cases of assignment, which seems to leave the matter to a considerable extent in the equitable discretion of the court." (Fns. omitted.)

In addition, we agree with Brienza's further argument that public policy reasons should provide priority to an attorney's contingent fee contractual lien over a subsequently acquired right of offset from a third party judgment creditor. Brienza argues that if an attorney's contractual lien for fees cannot prevail over a subsequently acquired right of offset, attorneys would be far

---

[11]Civil Code section 2897 provides: "Other things being equal, different liens upon the same property have priority according to time of their creation, except in cases of bottomry and respondentia."

less willing to represent clients with meritorious cases.[12] In *Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 535-536 [179 Cal.Rptr. 902, 638 P.2d 1299], where an attorney's prior contractual lien for fees was given priority over a subsequent statutory lien, our Supreme Court expressed this public policy by stating: "Public policy favors the conclusion we reach in this case. If an attorney's claim for a lien on the judgment based on a contract for fees earned prior to and in the action cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. . . ." We believe the same public policy reasons equally apply in according priority to an attorney's contractual lien over a subsequently assigned right of offset from a third party judgment creditor.[13]

■ We also note the court conducted a hearing on Tepper's offset motion on March 25, 1993. In the court's statement of decision filed on May 28, 1993, it does not specifically discuss equitable defenses such as unclean hands or other inequitable conduct on Tepper's part. However, in its discussion of the facts the court stated: "At the conclusion of the trial, I found that an oral partnership existed between Brienza and Tepper relative to certain houses. I further found that Tepper, because of his strong financial position, adopted every possible means to deprive Brienza of the benefit of their [p]artnership." In so stating, the court presumably believed Tepper acted inequitably toward Brienza in connection with the partnership dealings.

CONCLUSION

In balancing the competing equities, Mazzanti's equitable contractual lien for attorney fees and costs should be accorded priority over Tepper's equitable offset claim.

---

[12]The trial court here recognized the public policy issue in its statement of decision: "Public policy in California has long been that all citizens, even the impoverished, should not be precluded from obtaining effective counsel. If in every case a reasonable attorney's fee can be defeated by setoff, it would violate the public policy of permitting all citizens their right to counsel. Many plaintiffs in class actions and other pressing social issue lawsuits are those individuals who have suffered tax liens and judgments against them. The unfettered ability of judgment debtors to offset any judgment favoring such plaintiffs would have a chilling effect on counsel's desire and ability to represent an impoverished client."

[13]Brienza also provided us with additional case authority from other states and federal courts in support of his position that an attorney's contractual lien for fees should be given priority over a judgment debtor's offset right. In light of our ultimate disposition of the case in his favor, we need not discuss these cases.

## DISPOSITION

The order is affirmed.

Huffman, Acting P. J., and Haller, J., concurred.