[No. B214233. Second Dist., Div. Two. Mar. 4, 2010.]

POU CHEN CORPORATION, Plaintiff, Cross-defendant and Respondent, v. MTS PRODUCTS et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Ives, Kirwan & Dibble, Stephen A. Bost and Christopher Grivakes for Defendants, Cross-complainants and Appellants.

Miller Barondess, Louis R. Miller, A. Sasha Frid and Lukas J. Clary for Plaintiff, Cross-defendant and Respondent.

OPINION

**CHAVEZ, J.**—Defendants, cross-complainants and appellants MTS Products (MTS) and Ben Hsia (Hsia)[1] appeal from a postjudgment order granting a motion by plaintiff, cross-defendant and respondent Pou Chen Corporation (Pou Chen) to offset an outstanding $12.8 million judgment against Pou Chen obtained by the MTS defendants (the MTS judgment) with approximately $24.1 million of an outstanding and unpaid judgment against the MTS defendants that Pou Chen acquired by assignment from GBM International, Inc. (GBMI), and BHE Group Inc. (BHE).[2] The MTS defendants contend the trial court erred by granting the motion to offset because three existing contractual liens on the MTS judgment should have been given equitable priority over the BHE/GBMI judgment. We affirm the trial court's order.

## BACKGROUND

Global Brands Manufacture Ltd. (GBM) is an electronics manufacturer in China that wanted to sell products to Wal-Mart. Hsia is the president and sole shareholder of MTS, a California corporation and an approved Wal-Mart vendor. In 2003, GBM and MTS entered into negotiations concerning a proposed business relationship to sell products to Wal-Mart.

In September 2003, GBM formed GBMI as a wholly owned subsidiary for the purpose of selling electronics products to Wal-Mart. GBM and GBMI then entered into an oral agreement with Hsia and MTS that GBMI would purchase electronics products for sale to Wal-Mart from suppliers in China and Taiwan and ship them to MTS's warehouse in Sun Valley, California. MTS agreed to act as GBMI's agent and sell the products to Wal-Mart. MTS further agreed to remit all payments from Wal-Mart to GBMI in exchange for a commission payable upon GBMI's receipt of each Wal-Mart remittance. The parties thereafter began selling products to Wal-Mart in accordance with their oral agreement.

[1] MTS and Hsia are referred to collectively as the MTS defendants.

[2] The judgment obtained by GBMI and BHE against the MTS defendants is referred to as the BHE/GBMI judgment.

In August 2004, GBMI and MTS memorialized the terms of their oral agreement by entering into a written agency agreement. The parties subsequently decided to restructure their relationship as a joint venture, and GBM formed BHE as the entity through which the joint venture would operate. Pou Chen agreed to participate in the joint venture by contributing $10 million, in exchange for a 70 percent ownership interest in BHE. Hsia was appointed president of BHE and received a 30 percent ownership interest in the new entity. BHE then commenced shipping products to MTS, which in turn sold them to Wal-Mart and remitted the sales proceeds to BHE.

In April 2005, a dispute arose between the parties, and MTS began withholding payments from BHE. In September 2005, BHE and GBMI filed a second amended complaint against MTS to recover the withheld monies. In August 2005, the MTS defendants entered into an hourly fee retainer agreement with the law firm of Ives, Kirwan & Dibble (IKD) to defend them in the litigation and to file a cross-action against BHE, GBMI, GBM, and Pou Chen. The MTS defendants' cross-complaint alleged that Pou Chen and others damaged MTS's relationship with Wal-Mart by supplying defective products and by conspiring to overcharge the joint venture for those products. The MTS defendants' retainer agreement with IKD accorded IKD a contractual lien on any recovery for unpaid fees and costs advanced.

The case proceeded to trial, and the jury returned a special verdict in favor of GBMI and BHE on their causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and action for goods sold and delivered, and awarded GBMI and BHE monetary damages plus interest and lost profits. The jury returned a special verdict in MTS's favor on its breach of contract and breach of fiduciary causes of action against Pou Chen and awarded MTS past and future economic damages for these claims.

On May 20, 2008, the trial court entered judgment in favor of BHE and GBMI and against the MTS defendants in the amount of $46,485,577.58, plus postjudgment interest in the amount of $12,735.77 per day. On the same date, the trial court entered judgment in favor of the MTS defendants on their cross-action against Pou Chen in the amount of $11,476,877, plus prejudgment interest in the amount of $3,290.06 per day. On July 2, 2008, the trial court awarded BHE and GBMI costs in the amount of $188,562.08 and the MTS defendants costs in the amount of $62,929.93.

On July 15, 2008, IKD and the law firm of Levene, Neale, Bender, Rankin & Brill (LNBRB) entered into a joint retainer agreement with MTS to collect MTS's judgment against Pou Chen. The contingency fee agreement entitled the attorneys to 45 percent of any recovery and accorded them a contractual lien on any such recovery.

After the judgments were entered, BHE and GBMI sought to execute on their judgment by obtaining a writ of execution and levying on MTS's bank accounts. One of MTS's creditors, Chinatrust Bank U.S.A. (Chinatrust), sought unsuccessfully to prevent the execution and levy by filing a third party claim asserting contractual lien rights under a secured lending agreement entered with MTS. BHE and GBMI prevailed and they obtained a writ of execution and levied on MTS's bank accounts. The levies resulted in a net payment to BHE and GBMI in the amount of $24,813,457.84, leaving $23,643,689.62 that remained unpaid on the BHE judgment as of October 7, 2008.

On October 20, 2008, BHE and GBMI assigned the entire outstanding and unpaid judgment to Pou Chen for a payment of $100,000, and Pou Chen then moved to offset the judgments. The MTS defendants opposed the motion on the ground that three parties had liens on the MTS judgment that were senior to Pou Chen's right of offset. The MTS defendants claimed that IKD had a contractual lien worth up to $200,000 for unpaid fees and costs advanced pursuant to their hourly fee retainer agreement; that IKD and LNBRB had a lien worth up to $173,000 for unpaid fees and costs arising out of their joint representation of MTS on a contingency fee basis in order to collect on the MTS judgment; and that Chinatrust held a contractual lien worth approximately $2.965 million arising out of a secured line of credit it had extended to MTS in November 2003.

On December 12, 2008, the trial court granted Pou Chen's offset motion. As of that date, the BHE/GBMI judgment was outstanding in the amount of $24,071,219.14, including postjudgment interest and costs. The MTS judgment was outstanding in the amount of $12,821,355.35, including postjudgment interest and costs. After the offset, Pou Chen had a remaining judgment against the MTS defendants in the amount of $11,249,863.79.

On February 10, 2009, the MTS defendants filed the instant appeal.[3]

## DISCUSSION

The MTS defendants contend Pou Chen's right to offset should be subordinate to the claims of the contractual lienholders because the contractual liens existed before Pou Chen acquired the BHE/GBMI judgment. Pou Chen argues that its right to offset a competing judgment in the same action is absolute and has priority over the claims of the contractual lienholders. The relative priority of the parties' claims is a legal issue that we review de novo. (*Brienza v. Tepper* (1995) 35 Cal.App.4th 1839, 1843 [42 Cal.Rptr.2d 690] (*Brienza*).)

---

[3] We denied Pou Chen's motion to dismiss the appeal on the ground that the MTS defendants failed to appear for a judgment debtor's examination in the trial court below.

Both the MTS defendants and Pou Chen rely on *Brienza* as support for their respective positions. In *Brienza*, the plaintiff, Brienza, obtained a judgment against the defendant, Tepper, after a jury trial in San Diego. Brienza's lawyers, who represented him on a contingency fee basis, had a contractual lien on the San Diego judgment. (*Brienza, supra*, 35 Cal.App.4th at pp. 1841–1842.) Subsequently, in an unrelated action in Colorado, First Interstate Bank obtained a judgment against a Colorado general partnership in which Brienza was a general partner. Tepper, who was neither a party to the Colorado action nor involved in that action in any way, purchased the Colorado judgment from First Interstate Bank and sought to offset the Colorado judgment against the San Diego judgment. Brienza argued that his attorney's contractual lien should be given priority and that Tepper's motion should be granted only as to the remaining balance of the judgment. (*Id.* at pp. 1842–1843.)

█ After reaffirming the principle that "[t]he offset of judgment against judgment is a matter of right absent the existence of facts establishing competing equities or an equitable defense precluding the offset" (*Brienza, supra*, 35 Cal.App.4th at p. 1848), the court in *Brienza* concluded that sufficient equitable grounds existed to accord the attorney's contractual lien priority over Tepper's right of offset (*ibid.*). These grounds included the fact that granting priority to the attorney's lien would not totally defeat the equitable offset. Even after according priority to the attorney's lien, Tepper would still be able to assert an offset to a substantial portion of Brienza's judgment against him. (*Ibid.*) Tepper had also acquired the assignment of the Colorado judgment at a considerable discount because Brienza was insolvent. The court in *Brienza* therefore did not accord the Colorado judgment "the same weight in equity as a true equitable offset between the parties where judgment is obtained by filing suit, expending time and incurring fees and costs." (*Ibid.*, fn. omitted.) These equitable grounds are also present in the instant case. According priority to the approximately $3.33 million in contractual liens on the $12.82 million MTS judgment would still leave $9.47 million of that judgment against which Pou Chen could assert an offset. Pou Chen acquired the $23.64 million unpaid balance on the BHE/GBMI judgment for $100,000, a considerable discount.

█ Although there are similar equitable grounds for granting priority to the contractual lienholders in this case, there are also significant differences that distinguish *Brienza* from the instant case. In *Brienza*, the judgment debtor acquired the Colorado judgment from a third party in an unrelated independent action to use as an offset in a wholly separate action. Here, the BHE/GBMI judgment acquired by Pou Chen concerned the same transaction as the MTS judgment and was entered at the same time and in the same action as the MTS judgment. The court in *Brienza* underscored this distinction and noted that the right to offset competing judgments obtained in the

same action is superior to an attorney's lien: " '[T]he general rule is that while an attorney's lien is subordinate to the rights of the adverse party to offset judgments in the same action or in actions based upon the same transaction, it is nevertheless superior to any right to offset judgments obtained in wholly independent actions . . . . And clearly where the lien has attached to the judgment upon its rendition, it cannot be defeated by a subsequent right of set-off. So where, by virtue of his contract with his client, an attorney becomes the legal or equitable owner of a portion of or interest in the judgment, his rights are superior to the right to set off against such judgment a judgment recovered or obtained after the contract was made.' " (*Brienza, supra,* 35 Cal.App.4th at p. 1849, quoting Freeman on Judgments (5th ed. 1925) § 1148, p. 2392.) Applying this "general rule" to the instant case, the contractual liens are subordinate to Pou Chen's right to offset a judgment obtained in the same action based upon the same transaction.

▪ An additional ground for distinguishing *Brienza* from the instant case is the nature of the attorney fees liens that are at issue. In *Brienza,* the lien was for an attorney's contractual contingent fee. The court concluded that public policy reasons favored granting priority to such liens over a subsequently acquired right of offset from a third party judgment creditor, in order to prevent persons with meritorious claims from being denied effective legal representation because of their inability to pay legal fees. (*Brienza, supra,* 35 Cal.App.4th at p. 1850.) In this case, IKD's lien is for attorney fees incurred pursuant to an hourly fee contract, not a contingency fee agreement. The public policy considerations set forth in *Brienza* therefore do not apply to IKD's contractual lien. IKD and LNBRB's lien for attorney fees arises out of a contingency fee agreement; however, they did not enter into that agreement until July 2008—after the BHE/GBMI judgment was entered on May 20, 2008. Their lien is thus subordinate to that judgment.

The MTS defendants do not dispute the fact that Chinatrust's contractual lien rights were adjudicated by the trial court and found to be subordinate to the BHE/GBMI judgment. On August 14, 2008, Chinatrust asserted a third party claim in the trial court, arguing that its contractual lien rights were superior to BHE's and GBMI's right to execute on their judgment by levying on MTS's bank accounts. The trial court ruled that BHE's and GBMI's rights were superior to Chinatrust's contractual lien rights, and that ruling was not appealed.[4] As BHE's and GBMI's assignee, Pou Chen's rights under the BHE/GBMI judgment are superior to Chinatrust's contractual lien.

---

[4] By our own motion, we augment the record to include the trial court's order denying Chinatrust's third party claim. (Cal. Rules of Court, rule 8.155(a).)

## DISPOSITION

The trial court's order granting the motion to offset is affirmed. Pou Chen is awarded its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.