Filed 12/31/14  Azordegan v. Agadjanian CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHAHRAM AZORDEGAN, | B253979 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC365798) |
| v. | |
| ALBERT AGADJANIAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ronald M. Sohigian, Judge.  Affirmed.

Perry Roshan-Zamir for Defendant and Appellant.

Der-Parseghian Law Group, Mary Der-Parseghian for Plaintiff and Respondent.

_____

Defendant and appellant Albert Agadjanian appeals from the denial and partial denial of several postjudgment motions by which he sought to avoid paying in full a judgment entered against him.

Agadjanian contends that the trial court, in ruling on two of the motions, exceeded its jurisdiction by deciding issues outside the scope of remand of an earlier appeal. Agadjanian also asserts that the trial court erred by denying him an offset against the judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Agadjanian owns a parcel of commercial real property in the City of La Puente where he operated a car wash. In 2006, plaintiff and respondent Shahram Marc Azordegan leased the property from Agadjanian. The lease agreement called for a lease term of 30 years for $12,000 per month, with 3 percent increases every three years. A company Azordegan owned, 1 Source Global Tech, Inc. (1 Source), simultaneously purchased the car wash business from Agadjanian's corporation, Carloops, Inc. (Carloops). On behalf of 1 Source, Azordegan signed a 30-year promissory note in the amount of $1.4 million and a personal guarantee. Azordegan and 1 Source sued Agadjanian and Carloops in 2007, alleging various breaches in connection with the lease and purchase, including a failure to disclose that major road construction work would divert traffic away from the car wash. Following a jury trial in 2010, judgment was entered in favor of 1 Source and against Carloops in the amount of $950,000, and in favor of Azordegan and against Agadjanian in the amount of $360,000. In an unpublished opinion, *Shahram Marc Azordegan et al. v. Albert Agadjanian et al.*, case No. B226978 (filed May 2, 2012), we affirmed the judgment and related orders.

In an unpublished opinion deciding a second appeal filed by Agadjanian, *Shahram Marc Azordegan v. Albert Agadjanian*, case No. B237427 (filed Aug. 22, 2013), we found that the trial court properly denied two postjudgment motions seeking to compel acknowledgment of satisfaction of judgment. In the opinion, we noted that the trial court made a postjudgment order requiring Adgadjanian to assign to Azordegan funds accruing

2

from the property, and ordered Adgajanian to refrain from otherwise assigning rights to rent and other property-related receivables. In remanding the matter, we ordered that Azordegan comply with the trial court's orders to file partial satisfactions of judgment to account for collections going toward payoff of the judgment.

Meanwhile, while this matter was on appeal for the second time, Agadjanian prevailed in a separate unlawful detainer action against Azordegan for breach of the lease agreement. Judgment was entered in that action in July 2012, calling for restitution of the premises to Agadjanian and forfeiture of the lease agreement. Azordegan vacated the property in July 2012 and surrendered possession.

In this matter, following remand of the second appeal, in November 2013, Agadjanian filed a "motion to compel compliance with court's existing orders after remand, to set off cross-obligation actions and for acknowledgment of satisfaction of judgment."[1] Agadjanian contended that, based on setoff of unpaid amounts due under the promissory note, the judgment against him was satisfied.

After hearing extensive argument on the motion, the trial court issued an 18-page ruling on December 12, 2013. The court noted that Agadjanian's motion "injected into this case an entirely new issue that was not the subject of the pleadings or previous argument"—the interpretation of the promissory note and guarantee. The promissory note was stated as being non-recourse, and Azordegan relinquished the promissory note's collateral upon judgment in the unlawful detainer action. Interpretation of the promissory note and guarantee, however, was the subject of yet another pending lawsuit in another courtroom, case No. BC451305.[2] Due to concerns of interfering with that court's

---

[1] Around this time, Azordegan filed a document entitled "notice of compliance with Court of Appeal order," in which he stated that prior partial satisfactions of judgment reflected all amounts received by Agadjanian, and there were no further partial satisfactions of judgment to file.

[2] The majority of the instant case was heard by Judge Ronald Sohigian. Following his retirement, this action was transferred to Judge Rafael Ongkeko in March 2014. Meanwhile, beginning in 2010, a number of related cases (including the unlawful

3

jurisdiction, the trial court here declined to rule on Agadjanian's motion. Nevertheless, the trial court's order stated that, if it had proper jurisdiction, it would grant the motion in part and deny it in part; i.e., order the judgment against Agadjanian satisfied to the extent of note payments and accruals guaranteed by Azordegan that should have been made before July 16, 2012 (the date of judgment in the unlawful detainer action), leaving an unsatisfied amount of $164,918.58 as of July 16, 2012. The court further found that it was not obligated by the doctrine of law of the case to grant Agadjanian's motion in full.

Four days later, Agadjanian dismissed case No. BC451305 and subsequently filed a motion for reconsideration of the December 12, 2013 order, on the basis that dismissal of case No. BC451305 constituted a new fact and circumstance justifying reconsideration. The same day, Agadjanian filed a "motion for order setting off cross obligations (based on the lease between the individual parties) and acknowledging satisfaction of judgment." In this second motion, Agadjanian argued that after Azordegan surrendered the premises, Agadjanian mitigated his damages by leasing the property to another individual, who agreed to pay a fair market value, but whose monthly lease payments were substantially lower than Azordegan's. Agadjanian argued that his damages from Azordegan's breach of the lease were greater than the amount of the remaining judgment against him; by setting off the damages against the judgment, the judgment would be satisfied.

On January 23, 2014, the trial court granted the motion for reconsideration. It found that the judgment was satisfied except for $164,918.58 remaining as of July 16, 2012, for the reasons stated in the December 12, 2013 ruling. Agadjanian's motions were otherwise denied.

In March 2014, Agadjanian filed another "motion to compel acknowledgement of full satisfaction of judgment." This motion was essentially identical to his prior motion

eviction action and BC451305) were filed, but due to either the filing of affidavits of prejudice, or the parties' failure to file notices of related cases, these other cases were not assigned to Judge Sohigian.

4

"for order setting off cross obligations" based on the lease agreement. The trial court denied the motion on May 2, 2014.

## DISCUSSION

Agadjanian appeals from the orders of December 12, 2013, January 23, 2014, and May 2, 2014.[3] These orders are appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2).

### I. The Trial Court Did Not Exceed Its Jurisdiction

Code of Civil Procedure section 724.110, subdivision (a) provides, in pertinent part, that a judgment debtor may serve on the judgment creditor "a demand in writing that the judgment creditor execute, acknowledge, and deliver an acknowledgment of partial satisfaction of judgment to the person who made the demand." On appeal, we review the trial court's decision on a motion for satisfaction of judgment for substantial evidence. (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748.) "We will presume the existence of every fact the finder of fact could reasonably deduce from the evidence in support of the judgment or order. [Citation.] Moreover, the constitutional doctrine of reversible error requires that '[a] judgment or order of the lower court [be] presumed correct.' [Citation.] Therefore, all intendments and presumptions must be indulged to support the judgment or order on matters as to which the record is silent, and error must be affirmatively shown. [Citation.] The appellant has the burden to demonstrate there is no substantial evidence to support the findings under attack." (*Id.* at pp. 748-749.)

Agadjanian contends that the trial court "erred in expanding the issues and reaching out of the scope of the remittitur" in its December 12, 2013 and related January 23, 2014 orders. Agadjanian bases this argument on the dispositional language in the prior appeal (B237427), where we ordered that Azordegan comply with the trial court's September and November 2011 orders to file partial satisfactions of judgment to

---

[3] Agadjanian filed multiple, timely notices of appeal of these orders. The appeals were consolidated in this Court.

5

account for collections going toward payoff of the judgment. Apparently, Agadjanian believes that this language prohibited the trial court from making any different order upon remand, no matter the scope of the motion before it.

As the trial court correctly recognized, following remand, Agadjanian sought an order declaring that the judgment against him had been fully satisfied based on obligations arising under the promissory note and guarantee. This was an argument that had not been raised before, including in the prior appeal. Essentially, Agadjanian asked the trial court to rule on the effect of the promissory note, and now, unsatisfied with the result, he complains that the trial court lacked jurisdiction to rule. This argument is frivolous. Our prior disposition only pertained to the orders then on appeal, and we did not restrain the trial court from ruling on new matters presented following remittitur.

Furthermore, substantial evidence supports the trial court's findings that the promissory note and guarantee were non-recourse, and Azordegan satisfied his obligation by surrendering the premises and relinquishing the collateral on the promissory note.[4] As the trial court found in its December 12, 2013 ruling, the issue of whether the promissory note was satisfied by relinquishing the collateral was one potentially subject to dispute, and could involve presentation of evidence relevant to contractual interpretation, such as the parties' conduct. Agadjanian, however, elected to dismiss case No. BC451305, in which the effect of the promissory note and guarantee was to be litigated, and chose to submit the matter to the trial court here for a decision on whether any remaining obligations under the promissory note should offset the judgment. Based on the language of the agreement and minimal evidence tending to show the parties' conduct (including a

---

[4] The promissory note stated, in pertinent part: "This Note is secured by the Collateral [the 'personal property' located at the subject property] . . . . Despite anything to the contrary in this Note, and without in any manner affecting its validity, in the event of any default under the terms of this Note, Holder's sole recourse shall be to the security for this Note described herein." The trial court found that Agadjanian was properly assigned the promissory note and guarantee by Carloops, but that it had "all the rights of the payee—but no more."

6

bankruptcy petition filed by Azordegan listing the promissory note as a "disputed" debt), the trial court found that there was no amount remaining owing on the promissory note (following the July 16, 2012 unlawful detainer judgment) that could offset the judgment in this case.

As he did below, Agadjanian argues that his position is supported by *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991. The trial court properly found *Wozab* to be inapplicable. *Wozab* examined the effect of Code of Civil Procedure section 726, pertaining to a debt secured by a deed of trust on real property. (*Wozab*, at p. 996.) The instant case does not involve a debt secured by a deed of trust. Moreover, *Wozab*'s holding that a "bank cannot *unilaterally* waive its security interest by taking an improper setoff and then proceeding directly on the underlying debt" (*id.* at p. 1006) has no application to this case.

Therefore, the trial court's denials and partial denials of Agadjanian's motions were proper, and the court did not err in finding that the judgment against Agadjanian was satisfied except for $164,918.58 remaining as of July 16, 2012.

## II. The Trial Court Properly Denied the Motions for Setoff Based on the Lease

Agadjanian separately argues that the trial court erred by denying his initial motion for setoff based on the terms of the lease agreement, and by denying his second, effectively identical motion. In connection with the motions, Agadjanian submitted a declaration stating that, after Azordegan vacated the premises following the unlawful detainer judgment, Agadjanian re-leased the property for 24 years to a third party for a monthly amount less than half of what was charged to Azordegan. Agadjanian contends that, pursuant to Civil Code section 1951.2, he suffered damages in the amount of $1,804,963.28, which should offset the judgment.

"The right of offset rests upon the inherent power of the court to do justice to parties appearing before it." (*Jhaveri v. Teitelbaum*, *supra*, 176 Cal.App.4th 740, 753.) The trial court's decision on whether to allow offset is an equitable one and will not be reversed absent an abuse of discretion. (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of*

7

*America* (2000) 78 Cal.App.4th 355, 359.) An abuse of discretion occurs only when the court's ruling exceeds the bounds of reason and results in a manifest miscarriage of justice. (*Ibid.*; *Jhaveri v. Teitelbaum*, *supra*, 176 Cal.App.4th at p. 753.)

The trial court's ruling on the first motion for setoff based on the lease agreement simply stated that it was denied. At the hearing on the matter, the trial court stated that it denied the motion because it was "unmeritorious." In reviewing this ruling for an abuse of discretion, we indulge all intendments and presumptions in the ruling's favor on matters as to which it is silent. (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.)

In arguing that the trial court erred, Agadjanian relies on *Salaman v. Bolt* (1977) 74 Cal.App.3d 907 (*Salaman*) and *Erlich v. Superior Court* (1965) 63 Cal.2d 551 (*Erlich*). In *Salaman,* the court concluded that "the offset of judgment against judgment is a matter of right absent the existence of some facts establishing an equitable principle precluding it." (*Salaman*, at p. 919.) In *Erlich*, in deciding whether the trial court should have enjoined collection of judgment proceedings pending a decision on the validity of a disputed claim in another court, our Supreme Court wrote, "a judgment debtor who by assignment or otherwise becomes the owner of a claim against his judgment creditor in equity may have his claim set off against the judgment, and the fact that the claim has not itself been reduced to judgment is not an obstacle. Nor must the claim of the judgment debtor be liquidated [citation]; it being sufficient that the claim though unliquidated has matured." (*Erlich*, at p. 555.) Nevertheless, the Supreme Court recognized: "The mere fact that a judgment debtor asserts a claim against the creditor, however, does not of itself mean that he is entitled to enjoin collection of the judgment, and the trial court has broad discretion in determining whether to grant the stay or enjoin collection of the judgment. [Citation.] If the rule were otherwise, the judgment debtor could delay and harass his creditor by the filing of merely frivolous claims." (*Id.* at p. 556.)

Neither *Salaman* nor *Erlich* stands for the proposition that the trial court is required to offset a claim that has not been proven in court, merely based on the declaration of the person purporting to have the claim. In fact, the rule is otherwise. (See

8

*Brienza v. Tepper* (1995) 35 Cal.App.4th 1839, 1848 [declining to accord the same equitable weight to a judgment purchased by the judgment debtor as to "a true equitable offset between the parties where judgment is obtained by filing suit, expending time and incurring fees and costs"].)

In opposing Agadjanian's first motion, Azordegan argued that by claiming damages for breach of the lease agreement, Agadjanian was essentially seeking to reopen this case on the facts, to allow for the filing of amended or supplemental pleadings, or to retry the case. Indeed, damages for breach of a lease agreement are not sought by a summary proceeding, but rather pursuant to an ordinary civil action. (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 747; Friedman, Garcia & Hagarty, Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2013) ¶ 7:472). Furthermore, the question of whether a plaintiff can recover unpaid rent for the balance of a lease term is subject to various considerations, including whether, in re-leasing the property, the plaintiff acted reasonably and in a good faith effort to mitigate damages. (Civ. Code, § 1951.2, subd. (c)(2).) The trial court here did not abuse its discretion, therefore, by denying the first motion. Substantial evidence supports the inference that Agadjanian's claim for lease-related damages—which was not reduced to judgment, but was rather based solely on his own declaration of a purported agreement to re-lease the property for a "fair market" rent of less than half of what was charged to Azordegan—was too uncertain to support an offset.

Nor do we find that the trial court abused its discretion in denying Agadjanian's second motion for setoff based on the lease agreement. "'The burden is on the party complaining to establish an abuse of discretion . . . .'" (*Brawley v. J.C. Interiors, Inc.* (2008) 161 Cal.App.4th 1126, 1138.) The trial court denied the second motion "on all grounds raised in the opposition." Azordegan's opposition argued that the motion represented an improper motion for reconsideration of the order denying the first motion, and that Agadjanian's earlier filing of a notice of appeal divested the trial court of jurisdiction to decide the second motion. On appeal, Agadjanian does not attempt to

9

explain how either of these points was incorrect and thus has not met his burden of showing error.**5**

## DISPOSITION

The appealed orders (December 12, 2013, January 23, 2014, and May 2, 2014) are affirmed.

Respondent shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                              BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

---

**5**    Azordegan requests that this Court make factual findings and terminate the litigation.  We deny this request because, among other things, Azordegan did not file a notice of appeal.