[No. B221815. Second Dist., Div. Six. Sept. 29, 2010.]

RONALD A. ARAIZA, as Trustee, etc., Plaintiff and Respondent, v. LORI YOUNKIN, Defendant and Appellant.

## COUNSEL

Ferguson, Case, Orr, Patterson, Robert B. England, Sandra M. Robertson and David B. Shea for Defendant and Appellant.

Kenneth Newton Allen for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Lori Younkin appeals from the trial court's order confirming ownership of a Bank of America savings account to respondent Ronald A. Araiza, as successor trustee of the Lucia Howery Living Trust, and naming Gabriella Reeves the beneficiary of that account. Appellant, the stepdaughter of Lucia Howery, contends she is the owner of the savings account and that the transfer to Reeves is presumptively invalid pursuant to Probate Code section 21350[1] because respondent drafted the living trust and Reeves is his mother. Respondent contends Howery changed the beneficiary of the savings

---

[1] All statutory references are to the Probate Code unless otherwise stated.

account in her living trust and that appellant forfeited the section 21350 issue because she did not raise it in a timely fashion or obtain a ruling on it from the trial court. We affirm.

*Facts*

In 2001, Lucia Howery opened a checking account and a savings account at the Bank of America. Although she named appellant as the beneficiary of the savings account, Howery was the only person authorized to withdraw funds from it.

In August 2005, Howery established the Lucia Howery Living Trust. The declaration of trust states that Howery, as trustor, "declares the establishment of a revocable living trust by delivering to the Trust without consideration all property described in the attached Schedule of Trust Property . . . ." The schedule lists "Savings accounts," as among the categories of personal property delivered to the trust. Howery's declaration of trust further provides that, during her life, the trust will "hold, administer, and distribute all property" allocated to it for Howery's own benefit. At her death, the successor trustee "shall make the following distributions: [¶] I give my 2004 Infinity automobile to LORI YOUNKIN. [¶] . . . [¶] I give the following savings and checking accounts to GABRIELLA REEVES, Bank of America [checking account], contents of my safe deposit box at Bank of America, and Bank of America [savings account]."

At some point, Howery authorized Gabriella Reeves to sign checks written on the Bank of America checking account. She received a single monthly statement for both accounts; the statements were addressed to both Howery and Reeves. Bank of America was unable to locate a signature card for the checking account. It had only one signature card for the savings account; it lists Howery as the account holder and Younkin as the beneficiary.

Howery died on April 29, 2009. At that point, respondent Araiza became the successor trustee. Respondent is the attorney who drafted Howery's living trust. He is also the son of Gabriella Reeves.

After Howery's death, respondent petitioned the trial court for an order allowing him to convey the Bank of America accounts to Reeves. Appellant filed a written objection on the sole ground that she is the owner of the savings account. The trial court found that Howery's living trust changed the

beneficiary from appellant to Reeves. It made no finding on the question of whether Reeves is disqualified under section 21350 from receiving the savings account.

## Contentions

Appellant contends she is the sole owner of the savings account because Howery named her as the beneficiary and never changed that designation in a manner authorized by section 5303. She further contends that section 21350, subdivision (a)(2) invalidates any transfer to Reeves because respondent is the attorney who drafted the living trust and Reeves is his mother. Respondent contends the living trust documents were sufficient to change the beneficiary and that appellant forfeited the section 21350 issue by failing to raise it in a timely manner and by failing to secure a ruling on it in the trial court.

## Standard of Review

The trial court's construction of the Probate Code is subject to our de novo review. (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375–376 [119 Cal.Rptr.2d 642].) "Like the trial court, our primary duty in interpreting a statute is to determine and effectuate the Legislature's intent." (*Cahoon v. Governing Bd. of Ventura Unified School Dist.* (2009) 171 Cal.App.4th 381, 384 [89 Cal.Rptr.3d 783].) Our first step is to scrutinize the words of the statute, giving them a plain and commonsense meaning. (*Patton v. Sherwood* (2007) 152 Cal.App.4th 339, 345 [61 Cal.Rptr.3d 289].) "We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487 [30 Cal.Rptr.3d 823, 115 P.3d 98].)

## Discussion

### Change in Beneficiary by Trust

The type of savings account Howery established is referred to in the Probate Code as a "Totten trust" account. "The term Totten trust describes a bank account opened by a depositor in his [or her] own name as trustee for another person where the depositor reserves the power to withdraw the funds

during his [or her] lifetime. If the depositor has not revoked the trust then, upon his [or her] death, any balance left in the account is payable to the beneficiary." (*Estate of Fisher* (1988) 198 Cal.App.3d 418, 424 [244 Cal.Rptr. 5]; see also § 80.)

■ A Totten trust is one form of "multiple-party account" governed by the California Multiple-Party Accounts Law. (§§ 5100–5407.) Section 5302 describes the treatment of funds remaining in a multiple-party account on the death of one of the parties. Subdivisions (a) and (b) of section 5302 describe rights of survivorship in joint accounts (§§ 5130, 5302, subd. (a)), and pay on death or "P.O.D." accounts. (§§ 5130, 5139, 5140.) Where, as here, the multiple-party account is a Totten trust, "On death of the sole trustee . . . , (A) any sums remaining on deposit belong to the person or persons named as beneficiaries, if surviving, or to the survivor of them if one or more die before the trustee, unless there is clear and convincing evidence of a different intent . . . ." (§ 5302, subd. (c)(2).) Rights of survivorship "cannot be changed by will." (§ 5302, subd. (e).)

Section 5303, subdivision (a) provides that the rights of survivorship described in section 5302 "are determined by the form of the account at the death of a party." (§ 5303, subd. (a).) Subdivision (b) lists the methods by which the terms of a multiple-party account may be modified. It provides: "Once established, the terms of a multiple-party account can be changed only by any of the following methods: [¶] (1) Closing the account and reopening it under different terms. [¶] (2) Presenting to the financial institution a modification agreement that is signed by all parties with a present right of withdrawal. . . . [¶] (3) If the provisions of the terms of the account or deposit agreement provide a method of modification of the terms of the account, complying with those provisions. [¶] (4) As provided in subdivision (c) of Section 5405."[2]

■ Appellant contends that she remains the sole beneficiary of the savings account because Howery did not use one of the methods listed in section 5303, subdivision (b) to change the beneficiary. This narrow reading of the statute, however, fails to harmonize it with section 5302. Section 5302, subdivision (c)(2) provides that sums remaining on deposit in a Totten trust after the death of the sole trustee belong to the person named as beneficiary, "unless there is clear and convincing evidence of a different intent . . . ." Here, although the signature card for the savings account named appellant as the beneficiary, there is clear and convincing evidence that Howery had a "different intent" at the time of her death. She established a living trust that

---

[2] Section 5405, subdivision (c) provides that the parties to a multiple-party account may give written notice to the financial institution that withdrawals from the account are not permitted except with the signature of more than one party, or more than one survivor.

expressly stated her intention to give the savings account to Reeves. The trial court properly relied on the living trust to find that Howery intended to change the beneficiary of her Totten trust from appellant to Reeves. Because the change was made by a living trust rather than by a will, it is not invalidated by section 5302, subdivision (e).

*Section 21350*

Appellant contends the transfer of the savings account to Reeves is invalid pursuant to section 21350, subdivision (a)(2) because respondent drafted the living trust and Reeves is his mother. Respondent contends appellant forfeited appellate review of this issue.[3] We agree.

██ Section 21350 provides, "Except as provided in Section 21351, no provision, or provisions, of any instrument shall be valid to make any donative transfer to any of the following: [¶] . . . [¶] (2) A person who is related by blood or marriage to, is a domestic partner of, is a cohabitant with, or is an employee of, the person who drafted the instrument." (§ 21350, subd. (a)(2).) This prohibition does not apply if "[t]he court determines, upon clear and convincing evidence, but not based solely upon the testimony of any [disqualified transferee], that the transfer was not the product of fraud, menace, duress, or undue influence." (§ 21351, subd. (d).) Thus, section 21350 creates a rebuttable presumption that a transfer to a disqualified transferee is void as the product of fraud, menace, duress or undue influence. The burden is then on the presumptively disqualified transferee to rebut the presumption. (*Estate of Odian* (2006) 145 Cal.App.4th 152, 167 [51 Cal.Rptr.3d 390].)

Appellant's written objection to respondent's petition did not cite section 21350 or mention the relationship between respondent and Reeves. Instead, it raised a single issue: whether the living trust was effective under section 5303 to change the beneficiary of Howery's savings account. After respondent filed his reply to the objection, appellant's counsel filed a supplemental declaration attaching discovery responses in which respondent admits that he drafted the living trust and that Reeves is his mother. The declaration does not cite section 21350 or explain the relevance of respondent's admissions. Appellant never

---

[3] As our Supreme Court recently explained, "Waiver is the ' " 'intentional relinquishment or abandonment of a known right,' " ' whereas forfeiture is the ' "failure to make the timely assertion of a right." ' (*People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093] . . . .)" (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521–522, fn. 3 [113 Cal.Rptr.3d 327, 235 P.3d 988].) Consequently, although the terms "forfeiture" and "waiver" are often used interchangeably, it is more accurate to use the term "forfeiture" when referring to " 'the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court.' " (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 [69 Cal.Rptr.3d 105], quoting *In re Stier* (2007) 152 Cal.App.4th 63, 74 [61 Cal.Rptr.3d 181].)

filed points and authorities analyzing the statutes or addressing Reeves's presumptive disqualification. Consequently, respondent presented no evidence or argument rebutting the presumption.

At the hearing on appellant's objection, her argument focused on the section 5303 issue, rather than on section 21350. Near the end of the hearing, however, her counsel noted, "I think one final point, your Honor, is that we also raised by inference in our request for admissions and responses . . . that this was a trust that was drafted by the son of the primary beneficiary of the trust." Respondent argued that the issue before the court was "whether or not we've affected a transfer of the trust." He contended Reeves's disqualification could be decided on "a 17200 petition somewhere down the line . . . ." Appellant made no further argument. The trial court's order did not mention section 21350. Appellant did not file a motion to reconsider or otherwise attempt to secure a ruling on the section 21350 issue.

Appellant thus provided the trial court with no analysis of the applicable statutes and no argument on the question of whether Reeves is a disqualified transferee. She raised the section 21350 issue only "by inference," after respondent had already filed his reply to her written objection. This untimely, oblique reference to the statute gave respondent no opportunity to rebut the statutory presumption of disqualification. Compounding the difficulty, appellant did not demand a ruling on the issue from the trial court. A party who fails to alert the trial court to an issue that has been left unresolved forfeits the right to raise that issue on appeal. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Bullock v. Phillip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 678–679 [71 Cal.Rptr.3d 775].)

We recognize that "A party may raise a new issue on appeal if that issue is purely a question of law on undisputed facts." (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141 [91 Cal.Rptr.3d 864].) While it is undisputed here that Reeves is respondent's mother, respondent contends there is evidence that the transfer to Reeves is not invalid because it was "not the product of fraud, menace, duress, or undue influence." (§ 21351, subd. (d).) Because this factual issue has not been resolved, the exception to the forfeiture rule for issues of law does not apply. (*People v. Rowland* (1992) 4 Cal.4th 238, 259 [14 Cal.Rptr.2d 377, 841 P.2d 897].) Accordingly, we conclude that appellant has forfeited appellate review of the section 21350 issue. To the extent we have discretion to review the issue, we decline to do so. (*Hussey-Head v. World Savings & Loan Assn.* (2003) 111 Cal.App.4th 773, 783, fn. 7 [4 Cal.Rptr.3d 171].)

*Conclusion*

The judgment (order conveying title to personal property) is affirmed. Costs to respondent.

Gilbert, P. J., and Coffee, J., concurred.