Filed 5/24/16

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DONALD CRASNICK, as Trustee, etc., | ) | No. BV 031459 |
| | ) | |
| Plaintiff and Appellant, | ) | Central Trial Court |
| | ) | |
| v. | ) | No. 14U07629 |
| | ) | |
| JESUS MARQUEZ et al., | ) | |
| | ) | |
| Defendants and Respondents. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Harrison, Commissioner. Affirmed.

Lisa S. Erhlich of the Law Offices of Lisa S. Ehrlich, for plaintiff and appellant Donald Crasnick, Trustee of the 1979 Ehrlich Investment Trust.

Daniel J. Bramzon, Ross T. Kutash, and Claudia Medina of BASTA, Inc., for defendants and respondents Jesus Marquez and Milagro Diaz.

\*          \*          \*

I. *INTRODUCTION*

Judgment was rendered against plaintiff Donald Crasnick, Trustee of the 1979 Ehrlich Investment Trust (Crasnick), in his unlawful detainer action against defendants Jesus Marquez (Marquez) and Milagro Diaz (Diaz). The court subsequently granted Diaz's motion for attorney fees. Crasnick obtained money awards in a separate subsequent unlawful detainer

judgment and a small claims action judgment against Marquez and Diaz, and then filed a motion to set off the attorney fees award with the two judgments. The court denied the motion to set off and Crasnick appealed.

As discussed below, we affirm. The trial court correctly determined the lien on the attorney fees created pursuant to Diaz's retainer agreement with her lawyer, Deepika Sharma of Public Counsel (Sharma), had priority over Crasnick's judgments in his favor, and Crasnick failed to show the court abused its discretion in finding it would be inequitable to set off the attorney fees award with the judgments.

## II. *PROCEDURAL BACKGROUND*

On June 23, 2014, Crasnick filed an unlawful detainer action against Marquez and Diaz for failure to pay rent for their apartment, and on July 21, 2014, Diaz agreed to be represented by Sharma in the action. Pursuant to the written retainer agreement, Diaz would not be charged for the legal services provided. However, Diaz agreed that Sharma would "receiv[e] the attorney's fees awarded to [her] by any Court, or paid by the opposing party, in the Case." On September 3, 2014, the court granted Diaz's motion for summary judgment and, on December 19, 2014, granted Diaz's motion for attorney fees pursuant to Civil Code section 1717 and the attorney fees provision in the underlying property's lease. The court awarded $6,245 in attorney fees.

On June 9, 2015, Crasnick filed his motion for equitable setoff. Crasnick maintained he filed a second unlawful detainer action against Marquez and Diaz on October 9, 2014, for failing to pay rent for the same apartment as in his first action. Neither defendant was represented by counsel, and a default judgment was entered against them on November 13, 2014, awarding Crasnick restitution of the apartment, forfeiture of the lease, and $5,281.42 in damages. Crasnick also alleged he filed a small claims action against Marquez and Diaz on January 8, 2015, for damage caused to the apartment during the tenancy, and on March 2, 2015, a judgment was entered awarding him $1,096. Crasnick argued the damages awarded in the second unlawful detainer and in the small claims action should set off the attorney fees award in the first unlawful detainer. Diaz filed an opposition to the motion, arguing that, given

2

Sharma's attorney fees lien, which was created prior to the second unlawful detainer and small claims judgments, it would be inequitable to set off the attorney fees award with the two subsequent judgments.

On July 10, 2015, the court conducted a hearing on the setoff motion, and denied it. The court's written order stated, "An attorney's lien is established by a contract which provides that the fees will be paid from any recovery," and citing *Brienza v. Tepper* (1995) 35 Cal.App.4th 1839 (*Brienza*), indicated "A judgment in a subsequent action cannot offset the attorney's lien for services in this action." Crasnick filed a timely notice of appeal from the postjudgment order. (Code Civ. Proc., § 904.2, subd. (b).)

## III. *DISCUSSION*

As a threshold matter, we reject Crasnick's contention, made for the first time on appeal, that the trial court's order should be reversed because it did not have jurisdiction to adjudicate whether Sharma's attorney fees lien barred a setoff. "[B]ecause the attorney is not a party to the underlying action and has no right to intervene, the trial court acts in excess of its jurisdiction when it purports to determine whether the attorney is entitled to foreclose a lien on the judgment. [Citations.]" (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 328.) But, in asserting Sharma's lien in opposing setoff, Diaz was not attempting to foreclose an attorney lien on the judgment. Moreover, a court adjudicating the validity of an attorney lien "ha[s] fundamental jurisdiction over the subject matter and over the parties." (*Ibid*.) Thus, Crasnick waived on appeal the issue of whether the court exceeded its jurisdiction, by failing to make the contention in the trial court. (See *People v. Lara* (2010) 48 Cal.4th 216, 225 ["an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time"]; see also *Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127 ["[a] party who fails to alert the trial court to an issue that has been left unresolved forfeits the right to raise that issue on appeal"].)

A. <u>Priority</u>

"The relative priority of the parties' claims is a legal issue that we review de novo. [Citation.]" (*Pou Chen Corp. v. MTS Products* (2010) 183 Cal.App.4th 188, 192 (*Pou Chen*).)

3

The retainer agreement between Sharma and Diaz created an implied lien by "indicat[ing] that [counsel] is to look to the judgment for payment of [her] fee [citations]." (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531 (*Cetenko*).)  The lease stated Crasnick could recover fees incurred in any unlawful detainer between the parties, and Civil Code section 1717 "provide[d] a reciprocal remedy for a prevailing party who has not actually incurred legal fees, but whose attorneys have incurred costs and expenses in defending the prevailing party on the underlying agreement." (*Beverly Hills Properties v. Marcolino* (1990) 221 Cal.App.3d Supp. 7, 11.)  Given the agreement between Sharma and Diaz, that Sharma was entitled to receive any fees awarded, although the judgment and attorney fees award was entered in favor of Diaz, "'the attorney fees awarded . . . belong[ed] to the attorney[] who labored to earn them.' [Citation.]" (*Hernandez v. Siegel* (2014) 230 Cal.App.4th 165, 174.) Thus, even though Sharma agreed not to charge Diaz for attorney fees, a lien still existed based on the written agreement, because Sharma had a right to any fees awarded in the case.

 Because the lien was "tied to the client's contingent recovery of . . . an award of attorney fees . . . , the attorney [could not] enforce the lien until the contingency occur[red]. [Citation.]" (*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 293.)  Nonetheless, for purposes of determining the priority between the attorney's lien and any subsequent claims or judgments, the attorney's lien arose at the time the retainer agreement was entered into.  (See *ibid*. ["'[a]n attorney's lien arises upon execution of the retainer agreement'"]; see, e.g., *Brienza*, *supra*, 35 Cal.App.4th at p. 1848, fn. 10.)

Therefore, although the lien was unenforceable until attorney fees were awarded on December 19, 2014, the attorney fees lien arose when the agreement was executed on July 21, 2014.  Hence, the lien arose on a date preceding the November 13, 2014 and March 2, 2015 judgments in Crasnick's favor.

B.     The Trial Court Was Required To Weigh Equities

In determining whether to set off Crasnick's two judgments in his favor against the judgment entered against him, the court was required to weigh the respective equities in the case.  "[A] judgment debtor who has acquired a judgment or claim against his judgment

4

creditor may ask the court in which the judgment against him was rendered to have his judgment or claim offset against the first judgment. The offset of judgment against judgment is a matter of right absent the existence of facts establishing competing equities or an equitable defense precluding the offset. [Citation.]" (*Brienza*, *supra*, 35 Cal.App.4th at pp. 1847-1848.) "[O]ffset exists independent of statute and is based on the inherent power of the court to do justice to the parties before it. [Citation.]" (*Id*. at p. 1846.) Crasnick argues that, because the three judgments at issue involved the same apartment and parties, he had an absolute right to a setoff, and the court lacked power to weigh equities in deciding whether to grant his setoff motion. We disagree.

"In *Brienza*, the judgment debtor acquired the [second] judgment from a third party in an unrelated independent action to use as an offset in a wholly separate action. . . . [*Brienza*] underscored th[e] distinction [between separate actions and rights acquired in a single judgment] and noted that the right to offset competing judgments obtained *in the same action* is superior to an attorney's lien: '"[T]he general rule is that while an attorney's lien is subordinate to the rights of the adverse party to offset judgments in the same action or in actions based upon the same transaction, it is nevertheless superior to any right to offset judgments obtained in wholly independent actions . . . ."'" [Citations.]" (*Pou Chen*, *supra*, 183 Cal.App.4th at pp. 193-194, italics added.) *Brienza* thus indicated the right to setoff may be absolute, with no weighing of equities required, when the judgment to be set off is rendered *in the same action* as the one wherein an attorney's lien exists. In a case such as the present one, where the judgments used as setoff were rendered in different courts in different actions, albeit ones involving the same subject matter and parties, the right to setoff is not absolute.

Crasnick further argues no weighing was necessary because Sharma was assigned only a "chose in action" by way of the retainer agreement, rather than a right to a then-existing judgment for attorney fees. (See *Salaman v. Bolt* (1977) 74 Cal.App.3d 907, 919 ["[a]s a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies subject to any right to offset or other defenses existing against the assignor prior to actual notice of the assignment"].) Crasnick argues it follows that, until attorney fees

5

were actually awarded, Sharma, as the assignee, received an assignment subject to an absolute right to any setoff which the assignor might have been subject to in the interim.

Yet, applying a setoff in this manner, where an attorney has a lien which is unenforceable until a judgment is rendered and fees are awarded, ignores that ordering setoffs without regard to the equities in a case would be inconsistent with the equitable nature of setoffs in general. (See *Wm. R. Clarke Corp. v. Safeco Ins. Co. of Am.* (2000) 78 Cal.App.4th 355, 358-359 ["The right to a setoff is not absolute and may be restricted when the failure to do so would be inequitable"].) In the present case, one of the judgments upon which setoff was based—i.e., the award of damages to Crasnick in the small claims action—was entered *after* fees were awarded in the first unlawful detainer. The second unlawful detainer judgment awarding damages to Crasnick was entered before attorney fees were awarded, but the court granted summary judgment in the unlawful detainer which was the source of the attorney fees *prior* to entry of judgment in the second unlawful detainer. Ordering setoff without considering the equities would be particularly inappropriate in a case such as the present one, where the attorney fees award to be set off postdated one of the judgments simply due to the temporal fortuity of when the motion to award fees was heard.

C.    The Trial Court Did Not Abuse Its Discretion In Weighing Equities

"Whether a setoff is appropriate in equity is a question within the trial court's discretion. We review the court's decision under the abuse of discretion standard. [Citation.] An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.]" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 762-763.)

*Brienza* reviewed the trial court's determination to ascertain whether "sufficient equitable grounds exist to accord [the attorney's] contractual lien [in the first judgment] priority over [the second judgment creditor's] right of offset." (*Brienza*, *supra*, 35 Cal.App.4th at p. 1848.) *Brienza* considered several factors in ascertaining whether abuse of discretion was shown, but, because some were based on the particulars in its case, they are inapplicable to the

6

case *sub judice*. For example, in *Brienza*, the creditor on the second judgment obtained the judgment by purchasing it rather than by "filing suit, expending time and incurring fees and costs," a fact that weighed against the creditor. (See *Brienza*, *supra*, 35 Cal.App.4th at p. 1848, fn. omitted.) This factor does not weigh *against* Crasnick, because he did not buy the judgments in his favor, but it also does not weigh in his *favor* in balancing the equities.

Factors considered by *Brienza* which apply here are: the first judgment debtors' insolvency; whether the parties acted inequitably in pursuing their actions; and the public policy ramifications with respect to attorneys' willingness to agree to represent individuals if they know their fees will be subject to being stripped by subsequent judgments against the clients. (*Brienza*, *supra*, 35 Cal.App.4th at pp. 1848-1850.)

Regarding insolvency, *Brienza* noted that the attorney's client against whom the second judgment was entered was insolvent. But, *Brienza* determined that in its case, "[b]y according priority to [the attorney's] lien for attorney fees, [the judgment creditor] will still be able to assert an offset to a substantial portion of [the client's] judgment against him," and "[t]his result [was] unlike [that] where granting priority to the attorney's statutory lien would have totally defeated the equitable offset. [Citation.]" (*Brienza*, *supra*, 35 Cal.App.4th at p. 1848.) This factor weighed in Crasnick's favor, because the facts presented to the trial court showed Diaz qualified for representation by Public Counsel due to her indigency, and although the judgments in Crasnick's favor were also rendered against Marquez, it appears he, too, was indigent. The judgment for attorney fees against Crasnick was $6,245, and the two judgments in his favor ($5,281.42 and $1,096) amounted to a sum greater than the attorney fees judgment, thus completely defeating his equitable setoff.

With respect to the parties' conduct, Crasnick argued Sharma acted unethically in several regards, including "abandoning" Diaz in the second unlawful detainer action; filing opposition to Crasnick's setoff motion on Diaz's behalf "without [Diaz's] knowledge and consent"; and "blatant[ly] fail[ing] to communicate a settlement demand," wherein Crasnick's lawyer emailed Sharma prior to the hearing on the setoff motion an offer that they "provide mutual waivers and move on." Sharma, in turn, asserted in the opposition to the setoff motion

that Crasnick's lawyer acted inequitably in litigating the case wherein the attorney fees were awarded, refusing to dismiss the case when informed of the grounds for the summary judgment motion, and forcing Sharma to unnecessarily prepare for trial pending the court's ruling on the motion. Sharma also alleged Crasnick's lawyer violated professional ethics by filing the second unlawful detainer and obtaining a default judgment without notifying her, and maintained she attempted to contact Diaz since she received Crasnick's lawyer's email, but was unable to reach her.

The trial court did not state in its order how it resolved, or what weight it gave, the parties' conflicting allegations. Crasnick elected to proceed on appeal without a record of the oral proceedings of the hearing on his motion. It is well-established that it is the appellant's burden to provide an adequate record on appeal that affirmatively demonstrates error. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.) The insufficient record "precludes an adequate review and results in affirmance of the trial court's determination. [Citation]." (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1.) When the record is silent, "[w]e must . . . presume that what occurred at . . . [trial] supports the judgment. [Citations.]" (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1201.) In reviewing the court's ruling for abuse of discretion, we indulge all intendments and presumptions in the ruling's favor on matters as to which it is silent. (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.) We therefore presume the court resolved any conflict in the facts in Sharma's favor, and found the factor concerning the conduct of the parties weighed against ordering a setoff.

Lastly, regarding public policy, *Brienza* agreed with the attorney's argument that "if an attorney's contractual lien for fees cannot prevail over a subsequently acquired right of offset, attorneys would be far less willing to represent clients with meritorious cases." (*Brienza*, *supra*, 35 Cal.App.4th at pp. 1849-1850, fn. omitted.) *Brienza* further noted the "trial court [in its case] . . . recognized the public policy issue in its statement of decision: 'Public policy in California has long been that all citizens, even the impoverished, should not be precluded from obtaining effective counsel. If in every case a reasonable attorney's fee can be defeated by setoff, it would violate the public policy of permitting all citizens their right to counsel. Many

8

plaintiffs in class actions and other pressing social issue lawsuits are those individuals who have suffered tax liens and judgments against them. The unfettered ability of judgment debtors to offset any judgment favoring such plaintiffs would have a chilling effect on counsel's desire and ability to represent an impoverished client.'" (*Brienza*, *supra*, 35 Cal.App.4th at p. 1850, fn. 12.)

*Brienza* also observed that, in *Cetenko*, "where an attorney's prior contractual lien for fees was given priority over a subsequent statutory lien, our Supreme Court expressed this public policy by stating: 'Public policy favors the conclusion we reach in this case. If an attorney's claim for a lien on the judgment based on a contract for fees earned prior to and in the action cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. . . .'" (*Brienza*, *supra*, 35 Cal.App.4th at p. 1850, citation omitted.)

The public policy concern regarding the availability of lawyers for indigent litigants is applicable to the present context. In unlawful detainer litigation, multiple actions relating to the same dwelling and tenants can be filed based on successive notices to pay rent or quit. (See Code Civ. Proc., § 1161, subd. (2).) An attorney representing an indigent tenant may succeed in an action, or possibly more than one, thereby preventing the tenant from being evicted, and having attorney fees awarded in his or her favor. Yet, further judgments could disfavor the tenant if the tenant runs out of money to pay for the apartment, resulting in damage awards for back rent. If the attorney knew any fee award it gained could be eliminated by subsequent setoff judgments, he or she could make the rational financial decision to refuse to represent the poorest tenants, those who are most likely to eventually default in paying rent. The result would be that those in greatest need of legal representation would have fewer attorneys willing to represent them without charging fees, an outcome squarely against California's policy of attempting to make legal representation to indigents widely available.

Crasnick argues the public policy concern of not deterring representation of indigents by counsel is inapplicable here, because Sharma was employed by Public Counsel, "a tax exempt

9

organization whose purpose and tax exempt status is based upon providing indigent litigants representation for free." The argument appears to be that, since Public Counsel is sustained by public funding, it will decide whom to represent undeterred by the fact it could lose any attorney fees award it receives based on setoffs due to judgments in favor of a client's creditors. The argument is based on a panoply of facts which are not part of the record on appeal, namely, the internal structure and operation of Public Counsel, how it decides whom to represent, and the extent to which it uses attorney fees awards to supplement its public funding to expand the availability of services it provides to indigents. We do not consider arguments unsupported by the record. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.) Moreover, we presume the trial court considered the extent to which Public Counsel might be deterred from representing indigent tenants if it knew fee awards could be erased through setoffs, and gave this factor the appropriate weight in finding it would be inequitable to order setoff. (See *Williams v. Russ*, *supra*, 167 Cal.App.4th at p. 1224.)

## IV. *DISPOSITION*

The order denying setoff is affirmed. Respondents to recover costs on appeal.

_____
RICCIARDULLI, J.

We concur:

_____
P. McKAY, P. J.

_____
B. JOHNSON, J.

10