Filed 11/28/23  Taggart v. North Coast Village Home Owners Assn. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TIM TAGGART,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>NORTH COAST VILLAGE HOME OWNERS ASSOCIATION,<br><br>  Defendant and Respondent. | D081102<br><br><br>  (Super. Ct. No. 37-2021-00043436-CU-MC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Tim Taggart, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome; Law Office of Stratman & Williams-Abrego and Wallace H. Sweet, for Defendant and Respondent.

Tim Taggart appeals the trial court's judgment in favor of North Coast Village Home Owners Association (HOA) finding that the HOA did not exceed its authority under the voting provisions of the Davis-Stirling Common

Interest Development Act (Davis-Stirling Act or the Act). (Civ. Code,[1] §§ 5605, 4000 et seq.) Taggart argues the court erred in finding that two HOA assessments were "regular assessments" and not "special assessments" under section 5605, subdivision (b), which caps the aggregate annual amount of special assessments at "5 percent of the budgeted gross expenses of the association for that fiscal year" unless the HOA obtains homeowner approval. In contrast, homeowner approval is not needed for regular assessments that are less than "20 percent greater than the regular assessment for the association's preceding fiscal year[.]" (§ 5605, subd. (b).)

Taggart also makes two additional contentions for the first time on appeal: (1) that the HOA is estopped from asserting the assessments were regular assessments when it previously called them "special assessments" in HOA documents, and (2) that the HOA's labeling of the assessments was fraudulent.

We conclude that the purpose and use of an assessment, rather than its label or frequency, should determine whether the assessment is subject to limitations as a "regular" or "special" assessment under section 5605, subdivision (b). We further conclude that because the assessments were for essential operating expenses, they were regular assessments not subject to the 5 percent limit prescribed for special assessments under section 5605, subdivision (b). Lastly, we conclude that Taggart waived any arguments based on theories of estoppel or fraud by failing to raise them at trial. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Taggart owns a condominium at North Coast Village (North Coast) in Oceanside, a common interest development subject to the Davis-Stirling Act.

_____

[1] All further statutory references are to the Civil Code.

2

The HOA Board of Directors (Board), which is comprised of five elected members, has operational authority over North Coast. Day-to-day affairs at North Coast are managed by a general manager, who reports to the Board. A finance committee made up of North Coast homeowners meets periodically to review the HOA's finances and make budget recommendations to the Board.

In 2020, North Coast homeowners were paying a monthly assessment of $590 per unit. In May of 2020, the HOA's finance committee determined that with increases in insurance costs, the minimum wage for North Coast employees, inflation, utility costs, and other operating expenses, the HOA needed to impose an additional $1,000 assessment per unit to generate operating funds. Meeting minutes reflect that the Board voted to approve a $1,000 "special assessment" to be collected under three different payment options: a $1,000 lump sum by the end of September 2020, quarterly payments of $250, or $500 in January and April of 2021. An announcement to homeowners called the $1,000 amount an "additional assessment," and billing statements described the $1,000 as a "special assessment." The HOA's general manager in 2020 testified that the meeting minutes used the term "special assessment" to reflect the hope that the increase would be a one-time fee that would only be needed for one year. He hoped the HOA could challenge certain federal adjustments to flood zone maps that would bring operating costs back down for subsequent years. The HOA did in fact use the collected funds for operating expenses, including increased insurance, wage, and COVID-related costs.

The following year in May 2021, the finance committee determined that the HOA needed to raise monthly assessments to $645 and again impose a "special" $1,000 assessment per unit to cover operating expenses. Various HOA documents referred to this second $1,000 as an "assessment," "fee," or

"add-on." And this time, each unit was billed for a $500 "special assessment" twice that fiscal year, unless homeowners made separate payment arrangements. The HOA used the funds generated from the assessment to cover increased operating expenses that continued from the previous year.

In October 2021, Taggart sued the HOA seeking declaratory and injunctive relief including the return of the two $1,000 assessments to homeowners, along with relief associated with Taggart's participation in Board elections.[2] The parties stipulated that if the trial court concluded the $1,000 assessments were special assessments as contemplated by section 5605, then the assessments exceeded the 5 percent threshold under subdivision (b).

Following a one-day trial in July 2022, the court issued a proposed statement of decision which became the final statement of decision after neither party timely objected. (See Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590, subd. (g).) In its final statement of decision, the court concluded that the assessments were regular assessments, regardless of how they were labeled by the HOA, because they were used for recurring

---

[2] The HOA argues that Taggart has waived issues alleged in his complaint and decided at trial relating to Board elections, and we agree. Taggart's opening brief only addresses the 2020 and 2021 assessments and contains no argument regarding the HOA's alleged interference with Board elections. "Issues not raised in the appellant's opening brief are deemed waived or abandoned." (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7.) Because Taggart did not furnish meaningful argument with citation to authority regarding the Board election issues, we treat them as forfeited. (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 856; see also *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."].)

4

operating expenses.  The court entered judgment in the HOA's favor, and Taggart timely appealed.

DISCUSSION

Taggart argues the trial court erred in determining that each of the two $1,000 assessments in 2020 and 2021 were "regular assessments" under section 5605, and therefore subject to a higher threshold for requiring a homeowner vote under the Davis-Stirling Act.  Specifically, he argues that the assessments were "special assessments" because the HOA referred to them as "special" and imposed them in lump sums instead of distributing them across monthly payments like regular assessments.  The HOA contends that the distinction between "regular" and "special" assessments turns on the *purpose* of the assessment rather than its frequency or label.  We agree with the HOA's interpretation.

I

The key facts in this case are undisputed, and the primary dispute centers around the definitions of "regular" and "special" assessments under section 5605.  Section 5605, subdivision (b), provides:

> "Notwithstanding more restrictive limitations placed on the board by the governing documents, the board may not impose a regular assessment that is more than 20 percent greater than the regular assessment for the association's preceding fiscal year or impose special assessments which in the aggregate exceed 5 percent of the budgeted gross expenses of the association for that fiscal year without the approval of a majority of a quorum of members, pursuant to Section 4070, at a member meeting or election."[3]

---

[3]    Section 4070 provides:  "If a provision of this act requires that an action be approved by a majority of a quorum of the members, the action shall be approved or ratified by an affirmative vote of a majority of the votes represented and voting in a duly held election in which a quorum is

5

Neither section 5605 nor any other section of the Davis-Stirling Act defines "special" and "regular" assessments. "Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo. [Citation.]" (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604.) Our task is to " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute[,]' and we start by giving the words in the statute 'their usual and ordinary meaning' " while construing them in light of the statute as a whole and its purpose. (*United Educators of San Francisco etc. v. California Unemployment Ins. Appeals Bd.* (2020) 8 Cal.5th 805, 812, internal quotation marks omitted.)

We begin with the usual and ordinary meaning of the terms "regular" and "special." Merriam-Webster defines the word "regular," in relevant part, to mean "returning, recurring, or received at stated, fixed, or uniform intervals" or "constituted, selected, conducted, made, or otherwise handled in conformity with established or prescribed usages, rules, or discipline." (Merriam-Webster Dict. Online (2023) <https://unabridged.merriam-webster.com/unabridged/regular> [as of Nov. 17, 2023], archived at <[https://perma.cc/PR98-BJBE]>.) "Special" is defined as "distinguished by some unusual quality," "supplemental to the regular," "assigned or provided to meet a particular need not covered under established procedures," or "designed or selected for a particular purpose, occasion, or other end." (Merriam-Webster Dict. Online (2023) <https://unabridged.merriam-webster.com/unabridged/special> [as of Nov. 17, 2023], archived at <[https://perma.cc/Q8DW-9MPZ]>.) Because these terms are susceptible to

represented, which affirmative votes also constitute a majority of the required quorum."

the different meanings suggested by the parties, we agree with the trial court that "regular" and "special" in section 5605 are ambiguous, and we turn to extrinsic sources "in order to identify the interpretation that best effectuates the legislative intent." (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508.)

The treatment of "regular" and "special" assessments in other sections of the Davis-Stirling Act dealing with creditor exemptions is instructive. In 1985, the Legislature enacted former section 1366 (predecessor to sections 5600 to 5650) of the Act to grant HOAs the powers "necessary to the development's long-term operation." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378; Stats. 1985, ch. 874, § 14.) Before 2014, former section 1366, subdivisions (a) and (c), provided in relevant part that an HOA must "levy regular and special assessments sufficient to perform its obligations under the governing documents and this title[]" and that "[r]*egular assessments* imposed or collected to perform the obligations of an association . . . shall be exempt from execution by a judgment creditor of the association only to the extent necessary for the association to perform *essential services*, such as paying for utilities and insurance." (Stats. 2000, ch. 125 (Assem. Bill 1859) § 1, italics added.) The exemption of regular assessments from execution by a judgment creditor is now codified in section 5620.

The bill creating section 5620's predecessor initially included "regular *or special assessments*" in the exemption. (Assem. Bill No. 1859 (1999–2000 Reg. Sess.) § 1, as introduced Feb. 7, 2000, italics added; see *James F. O'Toole Co., Inc. v. Los Angeles Kingsbury Court Owners Assn.* (2005) 126 Cal.App.4th 549, 556 (*O'Toole*) [analyzing legislative history of judgment creditor exemption in Davis-Stirling Act].) The bill was later amended to

specifically remove "special assessments" from the exemption clause. (Assem. Amend. to Assem. Bill No. 1859 (1999–2000 Reg. Sess.) § 1, May 16, 2000.) As amended, the idea was that the bill would "provide limited protection to homeowners against creditors to assure that *essential services* are exempt from the execution by a judgment creditor . . . ." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1859 (1999–2000 Reg. Sess.) as amended May 16, 2000, pp. 4–6, emphasis added; *O'Toole*, at pp. 558–559.) As noted in a report to the Assembly Committee on Judiciary, "[t]he bill, by limiting the assessments protected to only those necessary for *essential services*, now strikes a reasonable balance between ensuring that such plaintiffs will be able to recover and ensuring that homeowner associations *will not be forced to turn the lights off* in order to pay a judgment." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1859 (1999–2000 Reg. Sess.) as amended May 3, 2000, p. 5, some italics omitted; *O'Toole*, at pp. 557–558.) This supports the conclusion that the Legislature included funds needed for essential services, like utilities and insurance, under the category of "regular assessments."

In contrast, before its amendment in 2000, former section 1366 authorized "special" assessments for "emergency situations" defined as "*extraordinary* expense[s] required by an order of a court," *extraordinary* expenses necessary to repair or maintain the common area where there was a threat to personal safety, and *unforeseeable extraordinary* expenses necessary to repair or maintain the property. (Former § 1366, subds. (a), (b) as amended by Stats. 1992, ch. 1250, § 2, p. 5974, italics added; *O'Toole, supra*, 126 Cal.App.4th at p. 556.) Although the current "emergency situation" section no longer references "special" assessments, the fact that the term "special assessments" was used in the provision's prior iterations in connection with "emergency" or "extraordinary" situations further supports

8

the HOA's position that "special assessments" are for unanticipated or extraordinary expenses beyond those required for essential services. (See § 5610.)

Other sources also support the HOA's interpretation of "regular" and "special" assessments. According to a treatise on common interest developments previously cited by this court and our Supreme Court, determining regular assessment amounts involves preparing an operating budget and estimating "the funds needed to perform the duties of the association during each fiscal year." (Cal. Comm. Int. Dev. L. & Prac. (2023 ed.) § 19:33 (Cal. CID); see *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81–82, citing Cal. CID (2003 ed.) § 22:2; *Dept. of Corporations v. Super. Ct.* (2007) 153 Cal.App.4th 916, 929, fn. 7, citing Cal. CID (2006 ed.) § 16:67.) The same treatise explains that "special assessments may be necessary *from time to time* to construct capital improvements, to pay for *extraordinary* expenses, or to make up for a shortfall in reserves." (Cal. CID, at § 19.38, italics added.) The treatise thus distinguishes between "regular" and "special" assessments based on their use for essential operating costs versus extraordinary expenses or capital expenditures. Though not binding on us, this treatise is consistent with the historical understanding we have discussed.

Lastly, we agree with the trial court that Taggart's interpretation would lead to absurd results. If an HOA could circumvent the Davis-Stirling Act's requirements with superficial labels that do not reflect an assessment's actual use, section 5605's increase limitations would be meaningless. (See § 5605, subd. (b).) Taggart even agreed at trial that the fact the assessments were at times called something other than a "special assessment" is not dispositive because "the term they used does not matter[.]" Similarly, if an

HOA could skirt the Act's requirements just by structuring assessment payments at different frequencies, section 5605, subdivision (b)'s requirements would be easily evaded. Taggart also acknowledged at trial that the Act makes no prescription for how frequently HOAs must collect assessments, and he conceded that the HOA could have structured payment of the $1,000 assessments to be monthly, quarterly, semiannually, or in lump sums. "As a matter of law, an assessment does not violate [the Act] merely because the costs *could* have been recouped incrementally. Nothing in the language of the statute suggests that is so." (*Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 694 [deciding that special assessment levied to replenish association's reserve fund after storm damage did not exceed the amount necessary to defray costs].)

We must give statutes "a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity." (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1303.) Taggart's position that an assessment's true nature is determined by its label or frequency would thwart enforcement of the Act's provisions. The HOA's interpretation, in contrast, comports with dictionary definitions as well as legislative intent. We therefore conclude that the HOA's interpretation, which defines assessments as either "regular" or "special" based on their intended and actual use, is the correct one. Furthermore, because the assessments at issue were used for essential operating expenses and not for capital improvements or other extraordinary or unforeseeable costs, we agree with the trial court's determination that they were "regular assessments" not subject to the 5 percent limitation under section 5605, subdivision (b).

## II

We deem Taggart's estoppel and fraud-based arguments forfeited because he failed to assert them in a timely manner in the trial court. (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127 (*Araiza*).)  Taggart made no mention of estoppel or fraud at trial, and the record before us contains no indication that the arguments were raised at any other time below.  (See *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 808 ["[a]lthough [appellant] asserted the statute of limitations as an affirmative defense in his answer, he did not raise it at trial.  We decline to consider an argument that [appellant] did not make below"].)

We recognize that "[a] party may raise a new issue on appeal if that issue is purely a question of law on undisputed facts[,]" but the facts underlying Taggart's estoppel and fraud arguments are not undisputed. (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141.)  The HOA contends, for example, that it never took contrary positions in a judicial or quasi-administrative setting, and that its labeling of the assessments as "special" was the result of mistake or ignorance, not with knowledge of its falsity or with intent to defraud.  Such factual disputes—which undergird Taggart's estoppel and fraud claims—were not put in issue in the trial court and thus have not been resolved, so the exception to the forfeiture rule for issues of law does not apply.  (*Araiza, supra*, 188 Cal.App.4th at p. 1127.)  To the extent we have discretion to review these issues, we decline to do so. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover its costs on appeal.

BUCHANAN, J.

WE CONCUR:


IRION, Acting P.J.


CASTILLO, J.